393 So.2d 751 (1980)
Mary Evans HARRIS, Individually and as Tutrix of the Estate of David H. Williams
v.
BOGALUSA CITY SCHOOL BOARD et al.
No. 13734.
Court of Appeal of Louisiana, First Circuit.
November 10, 1980.
*752 Richard P. Massony, Covington, for plaintiff.
James S. Farmer, Bogalusa, for defendants, Bogalusa City School Bd., Gary Holcomb, Jr. and Acy Calvin Hartfield.
Sondra A. Cheek, Gallaspy & Paduda, Bogalusa, for defendant, Velma Moses.
Before COVINGTON, CHIASSON and LEAR, JJ.
COVINGTON, Judge.
This is a personal injury suit by the mother and natural tutrix, Mary Evans Harris, on behalf on her minor son, David H. Williams, a seventh grade student at Bogalusa Junior High School in Washington Parish, Louisiana. Suit was brought against the Bogalusa City School Board, the principal of Bogalusa Junior High School, Gary Holcomb, the assistant principal, Velma Moses, and the industrial arts teacher, Acy Calvin Hartfield. Suit was also instituted against Cletis (Cletis) Harris, the minor who was involved in the altercation with the plaintiff's son, and Harris' mother, Ruby Harris Manning.
In a well-reasoned and carefully considered opinion, which we adopt as a part of our own and attach as "Appendix A" the district judge thoroughly discussed the evidence adduced at the trial and properly applied the law to the facts at hand in finding that there was no liability on the part of the school board or the individual school personnel. He rendered judgment adversely to the plaintiff on her claims against these defendants. Judgment was rendered in favor of plaintiff against Cletis Harris and Ruby Harris Manning. They have not appealed, so that aspect of the case is not before us.
We affirm the judgment.
It is contended that there was negligence on the part of the Bogalusa City School Board through its employees, the principal and teachers involved, in failing to properly supervise and control the students involved in the fight. The courts have repeatedly held that "(t)he fact that each student is not personally supervised every moment of each school day does not constitute fault on the part of the School Board or its employees." Lewi's v. St. Bernard Parish School Board, 350 So.2d 1256, 1258 (La.App. 4 Cir. 1977); Partin v. Vernon Parish School Board, 343 So.2d 417 (La.App. 3 Cir. 1977); McDonald v. Terrebonne Parish School Board, 253 So.2d 558, 562 (La.App. 1 Cir. 1971), writ denied, 260 La. 128, 255 So.2d 353 (1971); Bourgeois v. Indemnity Ins. Co. of North America, 60 So.2d 718 (La.App. Orl.1952).
In the case of Prier v. Horace Mann Insurance Company, 351 So.2d 265, 268 (La. App. 3 Cir. 1977), writs denied, 352 So.2d 1042, 1045 (La.1977), the Court stated:
"Our jurisprudence is settled that a school board is not the insurer of the lives or safety of children. School teachers charged with the duty of superintending children in the school must exercise reasonable supervision over them, commensurate with the age of the children and the attendant circumstances. A greater degree of care must be exercised if the student is required to use or to come in contact with an inherently dangerous object, or to engage in an activity where it is reasonably foreseeable that an accident or injury may occur. The teacher is not liable in damages unless it is shown that he or she, by exercising the degree of supervision required by the circumstances, might have prevented the act which caused the damage, and did not do so. It also is essential to recovery that there be proof of negligence in failing to provide *753 the required supervision and proof of a causal connection between that lack of supervision and the accident."
The instant situation is analogous to the one in Collins v. Wilson, 331 So.2d 603 (La. App. 1 Cir. 1976), wherein the Court found that the teacher had no reason to anticipate another fight after the first scuffle, and therefore no duty to guard against such an attack; hence, the teacher was not negligent.
We find that the record reflects that the school personnel in the instant case did everything reasonably possible to prevent the further altercation, but could not do so. Under the circumstances of this case, the teachers and staff could not have prevented the act which caused the damage. LSA-C.C. art. 2320; Collins v. Wilson, supra.
Accordingly, we affirm at the appellant's costs.
AFFIRMED.
 APPENDIX A
MARY EVANS HARRIS, INDIVIDUALLY 22ND JUDICIAL DISTRICT COURT
and AS THE TUTRIX OF THE ESTATE
OF HER MINOR CHILD, DAVID STATE OF LOUISIANA
H. WILLIAMS
VERSUS PARISH OF WASHINGTON
BOGALUSA CITY SCHOOL BOARD, ET ALS DOCKET NUMBER 42,458 
REASONS FOR JUDGMENT
This is a suit by the tutrix of David Williams against the mother of Cletus Harris, the Bogalusa School Board, Mr. Gary Holcomb, Mrs. Velma Moses and Acy Calvin Hartfield, for damage to Williams' left eye in a fight with Cletus Harris on May 24, 1976 on the Bogalusa Jr. High School campus. Williams was 14 when the incident occurred.
The fight started in Mr. Hartfield's industrial arts class during fourth period when, after words, Williams got a belt from a fellow student and Harris took off his own belt, and they began striking each other. Mr. Hartfield and a fellow teacher, Mr. Pope, broke up the fight. Pope took Williams and Hartfield took Harris and they talked to them, calmed them down, and gave the belts back. Hartfield then proceeded to take Williams and Harris to the office of be dealt with by the principal. The office was located some distance north of the class.
As the three proceeded to the office, Williams and Harris continued cursing each other, and they attempted to begin another altercation, but Hartfield got the belt from Harris and they continued to the office.
When they got to the office the assistant principal, Mrs. Moses was there, and in charge. They began a discussion relating to sending the boys home and Harris grabbed his belt, which Hartfield had laid on the counter, and ran out of the building. Hartfield watched Harris disappear south towards the bicycle rack. This was also the direction Harris would have to go in order to go home. He remained in the office with Williams while Williams attempted to call his parents who he was unable to reach. He and Williams then stepped out the office door where they discussed for a few moments where Williams lived. Hartfield told Williams to remain at the office while he went back to his class. He advised Williams that he would send a student back to the office with Williams' books. As he started to go back to his class, Harris came back by the office on his bike, heading north, some 25 feet away. The boys cursed each other again and Williams ran after Harris, although Hartfield shouted a warning for him not to do so. They went around the corner of the building and Hartfield ran after them. When he got around the corner he noted that Williams and Harris had started fighting again. He then ran back *754 to the office door and shouted for Mrs. Moses to call the police. He ran back around the building and the boys were some 40 feet away circling each other. Harris had a belt and an Afro comb commonly called a "pick" in his hands. Williams took the belt away from Harris and struck him with it, and they tied up, and Harris stabbed Williams with the "pick" over the left eye.
The Court finds the above to be the facts pertaining to the case. The liability of the defendants will be considered individually.

Gary Holcombe
Holcombe was the Principal. He was not present when the incident occurred and took no part. The evidence indicates no policy of his that would create liability on his part. He will be dismissed from the suit.

Mrs. Moses
Mrs. Moses was in charge of the office as Assistant Principal. The contention against her is that her ordering the boys home was negligence. It is not necessary to consider whether it was or not, simply because the incident occurred on the campus, at the office when neither boy had left to go home, and when the available supervision was still present. Consequently, the instruction to go home was not casually related to the eventual damage.
As far as Mrs. Moses physically breaking up the fight, all of the testimony indicates both the boys were students who would require literal physical man-handling once they were determined to fight, and both had been involved in several incidents before this one. Williams, for instance, had been expelled the year before for striking a teacher with a stick. In dealing with students of this type the Court knows of no legal requirement that a teacher or school administrator should place themselves in present danger of physical injury to avoid being held negligent for injuries resulting from an altercation between the students. The suit will be dismissed against her.

Mr. Hartfield
The only basis for holding Mr. Hartfield negligent would be his failure to physically separate the two after the fight began. He had, in fact, separated them at least twice before this. He might have had the opportunity to separate the two after telling Mrs. Moses to call the police and returning to the fray. By that time Harris was armed and Hartfield was fully aware of the physical risk to himself. For the Court to impose a duty on a teacher in Hartfield's situation to risk physical injury to himself would be extremely onerous. The Court simply cannot say that Hartfield acted unreasonably in not trying to physically subdue the boys involved in the incident. The suit against Hartfield will be dismissed.

Bogalusa School Board
The agents or employees of the School Board not being liable, there is no liability on the part of the Board. There is no negligence with reference to policy. After this incident a policy was instituted barring afro combs, but there is no evidence that prior to this there was any reason for such policy. The suit against the School Board will be dismissed.

CLETUS HARRIS AND RUBY HARRIS MANNING
The incidents' origination was probably mutual. However, Harris did not appear at Court, and the testimony of Williams is uncontradicted that when the final confrontation occurred Harris, being on a bicycle, was in a position to stay out of the final fight and did not do so. Harris also came back by the office on the bicycle immediately prior to the final fight, when it was unnecessary for him to do so in order to reach his home. Consequently, Harris and his mother are liable.

DAMAGE
There was unquestionably severe pain, and physical and emotional trauma on the part of Williams. An operation was necessary to repair the left eye and remove the *755 "pick". Williams claims he can see only a blur at this point. However, a June 16, 1977 report from Dr. Cotten indicates a 20/60 visual acuity in the left eye without a contact lens, but 20/20 with contact lens, although use of the contact lens apparently causes some double vision which might require an additional operation to cure. An award of $40,000.00 appears appropriate under the circumstances with an additional $338.00 for the bill of Dr. Haik.
Judgment in accordance with the above will be signed when presented.