631 So.2d 70 (1994)
Shirley Hendrix ADAMS, et al., Plaintiffs-Appellees,
v.
CADDO PARISH SCHOOL BOARD, et al., Defendants-Appellants.
No. 25,370-CA.
Court of Appeal of Louisiana, Second Circuit.
January 19, 1994.
Rehearing Denied February 17, 1994.
*72 Rountree, Cox, Guin & Achee by Gordon E. Rountree, Shreveport, for defendants-appellants.
John W. Wilson, Shreveport, for plaintiffsappellees.
Before HIGHTOWER, STEWART and WILLIAMS, JJ.
HIGHTOWER, Judge.
Caddo Parish School Board and its insurer appeal a damage award stemming from a fight between two high school students and a finding that one of the teachers provided negligent supervision. Appellee answers. For reasons hereinafter expressed, we reverse.

BACKGROUND
On February 23, 1989, between the first and second class periods at Byrd High School, Wyvondia Williams and plaintiff, Tracey Tawan Hendrix, became involved in a verbal altercation in the second floor corridor. Suddenly, Wyvondia grabbed a crutch from another student and swung at, but missed, Tracey. Gerald Badgley, a teacher on hall duty outside his classroom, went to the scene and separated the two antagonists, formerly long-time companions.
After breaking up the exchange, Badgley took Wyvondia by the arm and escorted her to the first-floor office of Roy Thomas, assistant principal in charge of discipline. She initially attempted to pull away and made verbal threats toward Tracey, but gradually calmed down.
On the first floor, the teacher stopped to assess Wyvondia's emotional state. After ascertaining that she had gained her composure, Badgley placed the student inside the administrator's personal office and closed the blind-covered door, all without knowledge that Thomas had actually left to attend an off-campus seminar. Badgley next told the secretary, Lillian Stephens, that he intended to return upstairs to assist Mark Allen, another faculty member, in procuring the other girl involved in the exchange.
Allen, a coach assisting with disciplinary matters during the first period, had previously been summoned to the altercation by means of a beeper. En route, he encountered Badgley and Wyvondia on the stairway between the two floors. Informed briefly of the situation, he found Tracey in a secondperiod class and asked her to follow him to Thomas's suite. There, aware of the need to separate the girls, Coach Allen requested that Tracey take a seat in one of two available rows of chairs in the outer reception area. Observing nothing unusual, he informed the secretary that the student had been involved in the "Code 1,"[1] and that Tom Cathey, the educator with second period administrative duties, would be down shortly to handle matters. Allen then proceeded upstairs to the third floor classroom he shared with Cathey. At that location, the coach could assume his teaching responsibilities and, thus, relieve the other instructor to deal with the two young women.
Soon after Allen's departure, Wyvondia apparently looked through the venetian blinds, observed her former adversary in the reception area, and "mouthed" a silent gesture about resuming the conflict. After a short pause and possibly a reciprocation of the taunt, she loudly charged out of the inner room and physically assaulted Tracey. The secretary, then assisting several students checking in and out of school, would later indicate that she never expected a fight to reerupt in the office area and that the ensuing brawl took her completely by surprise. Nevertheless, Stephens immediately jumped from her desk, yelled for the girls to stop, and then sought assistance. Almost simultaneously, Cathey and another teacher arrived on the scene and separated the two individuals. As a result of the attack, plaintiff collided with a glass-paned door and sustained injuries that included a serious laceration to her right shoulder.
Shirley Hendrix Adams, on behalf of her then minor daughter, Tracey, filed suit *73 against the Caddo Parish School Board on September 8, 1989.[2] Following trial, the district court decided in favor of plaintiff after deeming Allen negligent in supervising and separating the two combatants. The trial judge, however, did not find any other Byrd employee neglectful in their duties or the school board guilty of improper training of its personnel. Fixing medical expenses at $8,785 and general damages at $75,000, the adjudication reduced the award by fifty percent pursuant to LSA-C.C. Art. 2324(B). Appellants now assert several assignments of error, and plaintiff's answer essentially seeks, on various grounds, to increase the judgment amount.

DISCUSSION

Teacher and Administrator Liability
Appellants first argue that the trial court erred in finding that Mark Allen failed to provide reasonable supervision. Appellee conversely contends that more than one employee acted negligently. She specifically complains that Lillian Stephens, Gerald Badgley, and Roy Thomas also failed in their obligations of superintendence.

Applicable Law
It is well established that a school board, through its agents and teachers, is responsible for reasonable supervision over students. See LSA-C.C. Art. 2320; Coleman v. Joyner, 593 So.2d 451 (La.App. 2d Cir.1992), writ denied, 595 So.2d 657 (La. 1992). However, this duty to supervise does not make the board the insurer of the safety of school children. Hunter v. Caddo Parish School Board, 627 So.2d 772 (La.App. 2d Cir.1993); Coleman, supra. Furthermore, constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision. Collins v. Bossier Parish School Board, 480 So.2d 846 (La.App. 2d Cir.1985), writ denied, 481 So.2d 1350 (La.1986); Henix v. George, 465 So.2d 906 (La.App. 2d Cir. 1985); Harris v. Bogalusa City School Board, 393 So.2d 751 (La.App. 1st Cir.1980).
Before liability can be imposed upon a school board, there must be proof of negligence in providing supervision and, also, proof of a causal connection between the lack of supervision and the accident. Hunter, supra; Nash v. Rapides Parish School Board, 188 So.2d 508 (La.App. 3d Cir.1966). Further, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if the requisite degree of supervision had been exercised. Hunter, supra; Henix, supra. See also LSA-C.C. Art. 2320; Turner v. Caddo Parish School Board, 252 La. 810, 214 So.2d 153 (1968). Said differently, educators are required to exercise only that supervision and discipline expected of a reasonably prudent person under the circumstances at hand. Turner, supra; Coleman, supra; Ferguson v. DeSoto Parish School Board, 467 So.2d 1257 (La.App. 2d Cir.1985), writ denied, 469 So.2d 978 (La.1985); Henix, supra. Obviously then, the "failure to take every precaution against all foreseeable injury ... does not necessarily constitute negligence." Turner, 214 So.2d at 157.

Mark Allen's Actions
As the underpinning of its judgment, the trial court expressly concluded that a resumption of the fight within the office could be foreseen. However, foreseeability cannot be measured through hindsight, and it is error to do so.
Not a single witness recalled any physical re-eruption of hostilities in the assistant principal's office after a separation of antagonists. Cathey had worked at Byrd for 22 years; Stephens had been a secretary there for 23 years; and Thomas had six years of experience as assistant principal and ten as a classroom teacher. Yet none of these individuals could remember such an incident recurring in the administrative surroundings, although occasionally exchanges flared again after combatants left. James Festavan, a disciplinary expert, who had handled between 200 and 300 fights during 20 years as a teacher, assistant principal, and principal, *74 did not recollect any fracas reigniting under the circumstances existing here. He explained that usually, when placed in the office of an authority figure, students understand the finality of their situation and that they are in trouble. Such a procedure, he stated, has a deterrent effect insofar as the reinitiation of a fight.
Furthermore, and very importantly, even the plaintiff herself did not foresee a reeruption of the fight, or feel any cause for concern. Indeed, when the door from the inner office opened, she initially thought Wyvondia intended to use the bathroom or ask the secretary a question. Hence, given the two girls' longstanding friendship and the fact that Tracey expressly did not anticipate the sudden violent outburst, we fail to understand how Allen could be expected to do so.
The district court also criticized Allen's positioning of Tracey in a chair near the office occupied by Wyvondia, and his decision to briefly leave the two girls with the secretary. Viewing the situation from hindsight, the trial judge concluded that other, and presumably better, options existed. Again, however, reasonableness is evaluated in light of those circumstances existing at the time of the conduct, not post facto. Cf. Stein v. Ins. Corp. of Am., 566 So.2d 1114 (La.App. 2d Cir.1990); Douzart v. Jones, 528 So.2d 602 (La.App. 2d Cir.1988).
The record, first of all, reveals that Allen's assistance in bringing the students to the office in question, the site designated for handling disciplinary matters, followed school policy. Second, by placing Tracey in the reception area, he physically set the two girls apart by means of a blind-covered, closed door and separate rooms. Third, with the situation apparently under control, he reasoned that Stephens's adult presence and the administrative atmosphere would act as a deterrent to further misbehavior. Finally, with a classroom of students awaiting, he elected to discharge one of his primary duties as an instructor and, in the process, avoided leaving thirty pupils unattended while Cathey reported for disciplinary responsibilities. In the opinion of the expert, Allen could not reasonably foresee the subsequent events and nothing alerted him to undertake matters differently. Nor did Festavan consider the leaving of the secretary in charge, as occurred here, to be inappropriate.
Thus, the record does not support the finding below that the second eruption could be foreseen, or that Allen acted unreasonably in discharging his duty of supervision. In these respects, the trial court erred.
Additionally, the circumstances of this case are distinguishable from Thompson v. Hodge, 577 So.2d 1172 (La.App. 2d Cir.1991), concerning a second incident that ensued between two intoxicated adults after the attacker had been allowed to return to a dance through the same passageway where his adversary had gone to gain composure. Coach Allen, based upon experience, appropriately expected the administrative surroundings to have a calming, deterrent effect upon the two students faced with disciplinary action. As viewed by Festavan and strongly suggested by the present record, the initial altercation did not reflect "anything other than an everyday experience" at Byrd.

Lillian Stephens's Actions
Neither did the secretary, briefly left in charge of the office, act unreasonably under the circumstances. Her duties, of course, included a certain involvement when processing administrative matters at her desk. In any event, considering the unforeseeability of the second incident, she could not be expected to watch constantly the two girls in question. Never having a fight reerupt in the office during her long tenure at Byrd, she did not anticipate such an occurrence in the short time needed for Allen and Cathey to traverse their route. Even plaintiff, who subsequently found herself surprised by the attack, did not timely inform anyone about the preceding silent taunts. Moments later, when physical hostilities flared, Stephens first verbally attempted to intervene and then called for help. Hence, the trial judge correctly found her free from fault.

Gerald Badgley's Actions
Badgley testified that his duties as an instructor required that he stop any fight, bring the students to the assistant principal's *75 office to allow administrative handling, and then promptly return to the classroom, his primary responsibility. Upon observing the altercation in the hallway, he immediately intruded and escorted the apparent aggressor to the appropriate department.
Despite Wyvondia's initial verbal threats and attempts to pull away, Badgley detected a subsequent calming of her emotions after their arrival on the first floor. Eventually, tears appeared on her face and she lowered her head. After seating her in the inner office and assuring himself that tensions had dissipated, the teacher closed the previously described door, having instructed the young girl to wait for someone in authority to talk with her. He also informed Stephens that the detainee had been involved in the "Code 1," and that he would return upstairs to assist Allen.
Badgley discerned nothing indicating that Wyvondia still felt angry. Instead, his observations and conversation with the student led him to believe that she realized the seriousness of the matter and understood "the matter [to be] over with."
Nor did the teacher commit any misjudgment in returning to his classroom, after apprising Allen of the situation and satisfying himself that no assistance would be needed. Badgley understood Stephens to be a part of the staff and capable of controlling the matter at hand. His testimony indicated that he would not have left Wyvondia alone if "no adult [had been] present." The trial court concluded that he acted reasonably, and the record adequately supports that determination.

Roy Thomas's Actions
The trial judge similarly found no negligence on the part of Thomas. As stated, the assistant principal's attendance at an offcampus seminar precluded his involvement with the two students following their altercation. Moreover, the record shows no dereliction of duty in allowing the administrative assistants, Cathey and Allen, to address disciplinary problems in his absence, or in instructing his teachers about policies concerning student fights. Consequently, on this point, the district court did not err in its findings.

Improper Employee Training
In another complaint, appellee contends the school board should have been found negligent in its training of employees. In the trial judge's opinion, however, the evidence did not establish this claim. This is a factual finding and will not be disturbed in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The record reflects that the teachers and administrators had been properly informed of the applicable policies and procedures. Plaintiff, in her answer to the appeal, fails to surmount that showing.

Vicarious Liability Under Civil Code Article 2320
In another specification, appellee argues that the school board should be held accountable for the tortious acts of Wyvondia Williams. Plaintiff theorizes that LSA-C.C. Art. 2320 makes teachers vicariously liable for the misdeeds of students under their care. We disagree.
Under LSA-C.C. Art. 2320, responsibility does not attach for damages caused by their "scholars," unless a teacher "might have prevented the act which caused the damage" and failed to do so. We have found no case, and plaintiff cites none, maintaining an educator or school board vicariously liable for the torts of a student. Instead, the jurisprudence requires a dereliction of duty by the instructors or administration, leading, in turn, to injury or damage occasioned by their charges. See generally Hunter, supra; Coleman, supra; Harris, supra; Collins v. Wilson, 331 So.2d 603 (La.App. 1st Cir.1976), writ refused, 334 So.2d 428 (La.1976); McDonald v. Terrebonne Parish School Board, 253 So.2d 558 (La.App. 1st Cir.1971), writ refused, 260 La. 128, 255 So.2d 353 (La.1971); Nash, supra; Bourgeois v. Indemnity Ins. Co. of N. America, 60 So.2d 718 (La.App.Orl.1952).
On several occasions, we have indicated that a school board is not the insurer of the safety of its students. See, e.g., Hunter, supra; Coleman, supra. Furthermore, Bourgeois, supra, and Collins, supra, specifically *76 rejected arguments similarly predicated upon Article 2320. To levy liability, as sought by plaintiff, would effectively place the teacher in the same position, vis-a-vis the student, as a parent occupies toward his child. Considering the many societal problems confronting modern education, an imposition of liability without fault, based upon the delictual conduct of students, would further handicap present-day school systems. If threatened with almost unlimited liability, academic institutions would be forced to divert additional attention from their fundamental role as centers of learning.
Thus, public policy strongly militates against assessing a school board with vicarious liability for the delictual acts of its students.

Other Assignments of Error
Although appellants and appellee set forth other assignments of error regarding quantum and contributory negligence, our previous determinations moot these issues.

CONCLUSIONS
For the foregoing reasons, the trial court erred in finding that Mark Allen negligently provided supervision. Accordingly, we reverse that ruling and now render, at plaintiff's cost, judgment in favor of the Caddo Parish School Board. Appellee's present contentions, all without merit, are rejected.
REVERSED.
STEWART and WILLIAMS, JJ., concur.

APPLICATION FOR REHEARING
Before MARVIN, LINDSAY, HIGHTOWER, STEWART and WILLIAMS, JJ.
Rehearing denied.
NOTES
[1] "Code 1" is a term used at Byrd to refer generally to situations involving a fight or severely ill student.
[2] By the time of trial, Tracey having reached majority, the parties mutually agreed to substitute her as the proper party plaintiff.