37 So.3d 1133 (2010)
Robert WILLIAMS, Sr. and Fannie Williams, Individually and on Behalf of their Minor Son, Robert Williams, Jr., Plaintiffs-Appellees
v.
Tyson SMITH and Northeast Louisiana Marine Institute, Inc., Defendant-Appellant.
No. 45,069-CA.
Court of Appeal of Louisiana, Second Circuit.
May 28, 2010.
Judgment rendered May 28, 2010.
*1134 W. Scarth Clark, Mark E. Best, New Orleans, LA, for Appellant.
Jeffrey D. Guerriero, Monroe, LA, for Appellees.
Before BROWN, WILLIAMS, PEATROSS, MOORE & LOLLEY, JJ.
PEATROSS, J.
Defendant Northeast Louisiana Marine Institute, Inc. ("NLMI"), appeals a default judgment in favor of Plaintiffs, Robert Williams, Sr. and Fannie Williams, individually and on behalf of their minor son, Robert Williams, Jr. The trial court awarded Plaintiffs damages in the amount of $60,159.86. For the reasons stated herein, we reverse the judgment of the trial court and render judgment in favor of NLMI.

FACTS
NLMI is an alternative school facility located in Tallulah, Louisiana. On January 26, 2007, an altercation occurred between two students at the school, Tyson Smith and Plaintiff Robert Williams, Jr. The students were in the cafeteria when the incident began with a verbal exchange which quickly escalated into a physical altercation. Teachers present in the cafeteria responded immediately, as did a security officer who was in an adjacent room. Before the teachers could intervene, Tyson punched Robert twice in the face resulting in a broken jaw. Tyson then fled and the teachers chased and caught him.
In November 2007, Robert's parents, individually and on behalf of Robert, filed a petition for damages against Tyson and NLMI, alleging that Tyson committed an intentional tort and that NLMI was negligent in its supervision of the students. On December 7, 2007, NLMI, through its registered agent, was served with notice of the suit. Neither Defendant answered timely and a preliminary default was entered on August 27, 2008.
At the hearing on the confirmation of default, Robert and his parents testified. Robert testified that, on the morning of the incident, he was in the school cafeteria when Tyson began "cussing" at him in a loud voice in the presence of teachers and other students. Robert stated that Tyson then punched him twice in the face. The teachers responded and a security guard came out of an adjacent room and Tyson ran from the scene. Robert's parents *1135 testified about his injury and recovery.
As previously stated, after hearing the testimony, the trial court found NLMI liable for Robert's injury and the parents' damages and awarded $24,159.86 for medical expenses, $30,000 in general damages and $3,000 to each parent for loss of consortium. This appeal by NLMI ensued. Tyson did not appeal the judgment.

DISCUSSION
On appeal, NLMI asserts that the trial court erred in finding the school liable for the injuries sustained by Robert in the altercation. NLMI submits that the record does not support a finding that it was at fault because Plaintiffs failed to produce sufficient evidence to prove a prima facie case of negligence. We agree.
In reviewing a default judgment, we are restricted to a determination of the sufficiency of the evidence offered in support of judgment. Frank Farms, LLC v. Van Berg, 43,701 (La.App.2d Cir.12/3/08), 999 So.2d 119, writ denied, 08-3002 (La.2/13/09), 999 So.2d 1151. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. La. C.C.P. art. 1702. Article 1702(A) provides as follows:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default. When a judgment of default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default.
A prima facie case is established when the plaintiff proves the essential allegations of the petition with competent evidence, to the same extent as if the allegations had been specifically denied by the defendant. Franks Farms, LLC, supra, citing Martin v. Sanders, 35,575 (La. App.2d Cir.1/23/02), 805 So.2d 1209, and Thibodeaux v. Burton, 538 So.2d 1001 (La. 1989). The plaintiff must convince the trial court that it is probable that he would prevail at a trial on the merits. Id. The presumption that the default judgment was rendered upon sufficient evidence and is correct does not apply where, as in the present case, the testimony is transcribed and contained in the record. Hickman v. Wm. Wrigley, Jr. Co., Inc., 33,896 (La. App.2d Cir. 10/4/00), 768 So.2d 812. In such a case, the reviewing court is able to determine from the record whether the evidence upon which the judgment was based was sufficient and competent. Id.
To prevail in a negligence action, the plaintiff must prove that defendant owed a duty, that the duty was breached and that the defendant's substandard conduct was a cause of plaintiff's injuries and damages. Long v. State DOTD, 04-0485 (La.6/29/05), 916 So.2d 87. While a school board, through its agents and teachers, owes students a duty of reasonable supervision, the school is not the insurer of the safety of the children. Adams v. Caddo Parish School Bd., 25,370 (La. App.2d Cir.1/19/94), 631 So.2d 70, writ denied, 94-0684 (La.4/29/94), 637 So.2d 466. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. Wallmuth v. Rapides Parish *1136 School Bd., 01-1779 (La.4/3/02), 813 So.2d 341. Constant supervision of every child is not feasible or required to satisfy the duty. Wallmuth, supra; Adams, supra. Before a school board can be held liable for failure to adequately supervise students, there must be proof of negligence in providing supervision and a causal connection between the inadequate supervision and the accident. Wallmuth, supra; Adams, supra. Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of students, the risk of unreasonable injury must be foreseeable, constructively or actually known and preventable if a requisite degree of supervision had been exercised. Wallmuth, supra; Doe ex rel. Doe v. DeSoto Parish School Bd., 39,779 (La.App.2d Cir.6/29/05), 907 So.2d 275, writ denied, 05-2020 (La.2/10/06), 924 So.2d 167, citing Adams, supra.
The record in the case sub judice contains scant evidence of negligence on the part of NLMI. Significantly, Robert was the only witness who was present in the cafeteria at the time of the altercation to testify at the hearing on the confirmation of default. Robert testified that, at approximately 8 a.m. on January 26, 2007, he was in the cafeteria eating breakfast with the other students. Robert explained that, in response to a question from a fellow student, he advised the student of the time and then Tyson, who was sitting across the table from them, also asked for the time. When Robert refused to repeat the time, Tyson began cussing him. Robert stated that Tyson yelled at him for approximately 25 seconds and then punched him in the face. Robert testified that Tyson continued to yell, hit him a second time and ran away.
Robert's own testimony describing the incident is most telling. He admitted that the entire altercation lasted for seconds, maybe slightly longer than a minute: approximately 25 seconds of verbal confrontation and 20 seconds of physical altercation, adding, "It happened so fast." Robert testified on direct examination:
Q: Okay. And how long did this cussing go on that he was yelling at you or cussing at you?
A: I would say between 25 seconds.
Q: Okay.
A: The next thing I knowed (sic), it happened.
Q: Now was there any teachers or anyone within the close proximity of you?
A: Yes, it was teachers.
Q: And then, I'm understanding you, he struck you?
A: Yes, sir.
Q: How many minutes went by from that point, minutes, seconds or whatever?
A: It was seconds.
Q: Okay.
A: It was like at least 20 seconds.
On cross-examination, Robert went further to estimate that the entire altercation lasted "maybe a minute and about twenty-five, something like that. It happened so fast." He further explained:
Q: Okay. And after he struck you, did a teacher or the employees immediately come over to help you?
A: Yes, they came over then, but at that time, Tyson Smithhe had ran they had to catch him.
Finally, Robert stated that a male teacher helped him and that a security guard who was in an adjacent room responded to the cafeteria during the altercation.
The jurisprudence reveals that the vast majority of courts have found no liability on the part of school boards for fights occurring between students, or accidents, *1137 at school, either because the school board did not breach its duty of reasonable supervision, or because the school board or school personnel could not have prevented the incident from occurring. See Wallmuth, supra, and cases cited therein. In the present case, we first find that Plaintiffs failed to prove that NLMI breached its duty to provide reasonable supervision of the students in the cafeteria the morning of the altercation between Robert and Tyson. There were teachers present in the cafeteria and a security officer in an adjacent room, all of whom, by Robert's admission, were able to respond immediately. The fact that a security officer was not present in the cafeteria when the altercation arose does not constitute failure to reasonably supervise. Second, we conclude that the altercation between Robert and Tyson was a spontaneous event, without warning, arising out of seconds of verbal argument. The altercation was neither foreseeable nor preventable by reasonable supervision. See Wallmuth, supra. Plaintiffs failed to present sufficient evidence of a prima facie case of negligence on the part of NLMI to obtain confirmation of default.
La. C.C.P. art. 2164 provides that the appellate court shall render any judgment which is just, legal and proper on the record on appeal. Comment (c) to the article instructs that the text is broad enough to "permit affirmance in full and all revisions and modifications, as well as reversals or remandings." Many cases in which deficient proof on confirmation of default requires reversal warrant remand to the trial court for further proceedings. In the case sub judice, however, the testimony of Robert, the injured plaintiff and the only other participant in the altercation, was insufficient to sustain his burden of proof. Under the factual circumstances of this case, we find that Robert's own testimony undermines his case and would preclude any finding of liability on the part of NLMI. We, therefore, find no reason to remand and, in the interest of justice and judicial economy, reverse the judgment of the trial court and render judgment in favor of NLMI. See Pepe v. Tournage, 128 So.2d 56 (La.App. 1st Cir.1961).
In light of our conclusion herein, we pretermit any discussion of the argument of NLMI regarding the trial court's failure to allocate fault between it and Tyson.

CONCLUSION
For the foregoing reasons, the portion of the judgment of the trial court finding liability on the part of Northeast Louisiana Marine Institute, Inc. is reversed and judgment is rendered in favor of Northeast Louisiana Marine Institute, Inc. Costs are assessed to Plaintiffs, Robert Williams, Sr. and Fannie Williams.
REVERSED AND RENDERED.
WILLIAMS, J., dissents with written reasons.
LOLLEY, J., dissents for the reasons assigned by WILLIAMS, J.
WILLIAMS, J., dissents.
I respectfully dissent.
The Northeast Louisiana Marine Institute, Inc. ("the Institute") is an alternative school facility that accepts students with disciplinary problems from various public school districts. A judge ad hoc was assigned to this case after the recusal of District Judges Crigler and Lancaster, who were both members of the Institute's advisory board.
A school, through its agents and teachers, owes a duty of reasonable supervision over students. LSA-C.C. art. 2320. The supervision required is reasonable competent supervision appropriate to the age of *1138 the students and the circumstances. This duty does not make the school the insurer of the safety of the children. Coutee v. Glade Middle School, 03-128 (La.App. 5th Cir.6/3/03), 848 So.2d 754. To prove a prima facie case, a plaintiff must present competent evidence that persuades the trial court that he would probably prevail at a trial on the merits. Hickman, supra.
In the present case, Robert testified that at the time of the altercation, he was in the cafeteria eating breakfast with the other students when Smith began cussing at him loudly enough for others in the cafeteria to hear. Robert stated that Smith was yelling at him for approximately 25 seconds before punching him in the face. Robert testified that Smith then yelled something else, punched him in the face a second time and ran away from the scene. Robert stated that during the altercation, there was no guard nearby, but there were male teachers close enough to hear Smith yelling.
Contrary to the majority's assertion, the testimony does not show that the Institute staff responded "immediately." Robert testified that only after he was punched the second time did one male teacher approach to assist him. After the altercation had occurred, a guard came out of another room and responded by telling Robert to wash the blood out of his mouth. Robert estimated that the altercation lasted approximately one minute and 25 seconds from the time Smith began yelling until the second punch. Robert stated that his jaw looked broken and an Institute employee transported him to the emergency room at Madison Parish Hospital, where he was examined and diagnosed with a fractured jaw. Robert was transferred to LSU Health Sciences Center for surgery to have his jaw wired shut.
The evidence in the record shows that the Institute, in accepting students from the public schools, owed a duty to provide reasonable supervision appropriate to the age and circumstances of the students. The testimony demonstrated that at the time of the altercation, a guard was not present in the cafeteria and the instructors who were present did not respond when Smith began yelling at Robert in a loud voice, an indication of conflict. Given the circumstances at the Institute, where students with discipline problems were gathered together, the trial court could reasonably have found that the guard's absence from the room, along with the teachers' failure to respond before a punch was thrown, constituted a breach of the Institute's duty to adequately supervise the students.
In light of the Institute's function to provide an alternative program for students with known behavioral problems, this was not the typical school setting, but was a potentially volatile situation. As a result, the risk that student aggression would cause this type of injury was reasonably foreseeable to the Institute's staff. In addition, the record supports a finding that there was a causal connection between the inadequate supervision and Robert's injury, because Smith likely would not have hit Robert if a guard had been present in the cafeteria, or if the teachers nearby had been more attentive to potential problems, as would be expected in this type of facility.
At the hearing, the testimony established that Institute personnel failed to respond to the altercation before the escalation to physical violence, that no one responded after Robert was punched the first time and that there was no response until he was punched again and Smith had time to run away from the scene. Smith's loud cursing, not for a few seconds but for one-half minute, gave Institute personnel a warning of trouble that was not heeded. Thus, the evidence indicates that the injury *1139 could have been prevented with adequate supervision.
The trial court heard the evidence and was convinced that the plaintiffs would probably prevail at trial. The majority has simply substituted its assessment of the evidence for that of the fact finder. Based upon this record, I cannot say the trial court was incorrect in determining that the plaintiffs presented sufficient evidence to establish a prima facie case that the Institute was negligent in supervising the students and this negligence was a cause of plaintiffs' injuries. Thus, I would affirm the trial court's judgment finding the Institute liable for plaintiffs' damages.
In any action for damages where a person suffers injury, the percentage of fault of all persons causing or contributing to the injury shall be determined, regardless of whether the person is a party to the action or a nonparty and whether the other person's identity is not known. LSA-C.C. art. 2323. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including whether the conduct resulted from inadvertence, the degree of risk created by the conduct, the capacities of the actor and any extenuating circumstances. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985); Brothers v. Direct General Insurance Co. of Louisiana, 08-1455 (La.App. 3rd Cir.5/6/09), 11 So.3d 1154.
In the present case, since the trial court failed to assess fault as required pursuant to Article 2323, I would make an independent review of the record to allocate fault between the Institute and Smith. See Landry v. Bellanger, 02-1443 (La.5/20/03), 851 So.2d 943. Although Robert was injured by Smith's intentional act, the Institute's negligent conduct contributed to the risk of injury and the Institute was in a superior position to provide a safe environment for the students under its supervision. In addition, there were extenuating circumstances in that the Institute's staff should have possessed a heightened awareness of potential conflicts between students, who were assigned to the Institute's facility because of their prior behavior problems. After considering the relevant factors, I would amend the judgment to assess the Institute with 40% of the fault in causing the plaintiffs' injuries and Tyson Smith with 60% of the fault.