# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-623

**LETICIA TAYLOR, ET AL.**

**VERSUS**

**ANGELA SWIFT, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20196609
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GARY J. ORTEGO**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sharon Darville Wilson, Gary J. Ortego, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

Troy A. Broussard
Allen & Gooch
2000 Kaliste Saloom Rd, Suite 400
Lafayette, LA 70508
(337) 291-1370
COUNSEL FOR DEFENDANT/APPELLEE:
    The Society of The Roman Catholic Church Lafayette Diocese
    Holy Family Catholic School

Patrick Daniel
Patrick Daniel Law Firm
Attorney At Law
4801 Woodway Dr., Suite 440-W
Houston, TX 77056
(713) 999-6666
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Leticia Taylor
    Richard Soularie
    Leticia Taylor obo minor, T.S.
    Richard Soularie obo minor child, T.S.

Raymond L. Panneton
Attorney at Law
7941 Katy Freeway
Houston, TX 77024
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Richard Soularie
    Leticia Taylor obo minor, T.S.
    Richard Soularie obo minor child, T.S.

**ORTEGO, Judge.**

This civil matter is a school supervision case involving a sexual encounter/incident between middle school students, who were minors, at a catholic elementary/middle school. The incident occurred inside a school bathroom just after dismissal. The school and the Diocese were granted a motion for summary judgment dismissing the case. The plaintiffs appeal. For the following reasons, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

In January of 2014, T.S., C.C., D.B., and C.A.[1] were middle school students at Holy Family School in Lafayette, Louisiana. T.S., a female, and C.C., a male, were in a boyfriend/girlfriend relationship. The weekend of January 11-12, T.S. and C.C., via messaging, planned to meet up after school on Monday, January 13, 2014, in the Pre-K bathroom for the purposes of having sex. This bathroom was located at the rear of the school. This plan was foiled on that Monday by the continued presence of T.S.'s younger brother. Then, T.S. and C.C. again planned to meet up the next day, Tuesday, January 14, 2014. On that day, approximately 10 to 15 minutes after the dismissal bell at 3:00, T.S. was found by a Holy Family administrator, Vice Principal Bernadette Derouen, who was on dismissal duty, hiding in the Pre-K bathroom stall with her lower garments unfastened. After investigating the matter, it was discovered that T.S., along with three male students, C.C., D.B., and C.A., were in the bathroom area for the purpose of participation in this sexual encounter. Whether or not the encounter was consensual is disputed by the parties, but is not relevant to this case.

---

[1] We use the minor children's initials for confidential purposes. *See* Uniform Rules-Courts of Appeal, Rule 5.2.

Five years after the incident, Plaintiffs/Appellants, Leticia Taylor and Richard Soularie (collectively referred to hereinafter as "Taylor"), T.S.'s parents, filed suit, individually, and on behalf of T.S. against Angela Swift, the mother of D.B.; C.C., now a major; and Dennis Angelle, Sr., the father of C.A., for the alleged rape, sexual abuse, molestation, sexual battery, sexual assault, and exploitation of T.S. Taylor thereafter amended the petition to add Holy Family School and the Diocese of Lafayette as defendants (Holy Family and the Diocese collectively referred to hereinafter as "the Diocese").

Following discovery, the Diocese filed a motion for summary judgment. Taylor filed an opposition to the motion, but counsel for Taylor waived oral argument at the hearing held on June 27, 2022. The trial court granted the Diocese's motion, dismissing Taylor's action as to the Diocese. Taylor appeals this judgment assigning five errors.

## ASSIGNMENTS OF ERROR

On appeal, Taylor assigns the following errors by the trial court:

1.  The Trial Court erred by ruling no genuine issue of material fact existed as to whether Appellee's supervision was reasonable or instead negligent at the time of the incident.

2.  The Trial Court erred by ruling no genuine issue of material fact existed as to whether Appellees had knowledge, constructive notice, or foreseeability as to sexual conduct.

3.  The Trial Court erred by ruling no genuine issue of material fact existed as to whether Appellees' facts of supervision at the time of the incident were a cause of the incident.

4.  The Trial Court erred by weighing and/or determining the credibility of the contradictory and self-contradictory testimony of Appellees' principal and vice-principal.

5.   The Trial Court erred by weighing, determining the credibility of, and/or disregarding admissible expert opinion testimony that was substantively unrebutted, not challenged by Appellees under any evidentiary objection, and not excluded by the Trial Court.

## LAW AND DISCUSSION

*I.     Standard of Review*

This court, in *Byline Bank v. Alexandria Hospitality Partners, L.L.C.*, 21-630, pp. 7-8 (La.App. 3 Cir. 5/25/22), 339 So.3d 786, 790-91, addressed the standard of reviewing a motion for summary judgment, stating:

> A court of appeal reviews summary judgments de novo, using the same standard used by the trial court. *Higgins v. Louisiana Farm Bureau Cas. Ins. Co.*, 20-1094 (La. 3/24/21), 315 So.3d 838. Pursuant to La.Code Civ.P. art. 966(A)(2), the summary judgment procedure is favored and must be construed to accomplish its purpose of "the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." Article 966(A)(3) further provides that the "motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."
>
> The Louisiana Supreme Court in *Larson v. XYZ Insurance Co.*, 16-745, pp. 6-7 (La. 5/3/17), 226 So.3d 412, 416-17, further provides:
>
> > In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Id*. at 765-66.
>
> > . . . .

3

When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in La. C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B); see also *Dejoie v. Medley*, 2008-2223 (La. 5/5/09), 9 So.3d 826, 832. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Richard v. Hall*, 2003-1488 (La. 4/23/04), 874 So.2d 131, 137.

*II.    Reasonable Supervision and Foreseeability*

Taylor's assignments of error are separate arguments as to one alleged error, that the trial court erred by granting the Diocese's motion for summary judgment. We will address these arguments while conducting the mandated de novo review.

The Louisiana Supreme Court, in *Wallmuth v. Rapides Parish School Bd.*, 01-1779, p. 8 (La. 4/3/02), 813 So.2d 341, 346, addressed the liability of a school for the actions of its students, stating the following:

The court of appeal set out what we believe is the correct standard of liability regarding the liability of a school board for the actions of its students under La. C.C. art. 2320:

A school board, through its agents and teachers, owes a duty of reasonable supervision over students. La. Civ.Code art. 2320; *Adams v. Caddo Parish School Bd.*, 25,370 (La.App. 2 Cir. 1/19/94), 631 So.2d 70, *writ denied*, 94,684 (La.4/29/94), 637 So.2d 466. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. *Jackson v. Colvin*, 98-182 (La.App. 3 Cir. 12/23/98), 732 So.2d 530, *writ denied*, 99-228 (La.3/19/99), 740 So.2d 117. This duty does not make the school board the insurer of the safety of the children. *Id*. Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision. *Adams*, 631 So.2d 70.

> Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. *Id.* "Injury from horseplay between discerning students which, at some stage may pose an unreasonable risk of harm to the participants, does not automatically and of itself render the supervising authority liable." *Henix v. George*, 465 So.2d 906, 910 (La.App. 2 Cir.1985). Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of students, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. *Id.*

*Wallmuth*, Slip Op. at p. 3, 802 So.2d at 32.

The above jurisprudence establishes the duty owed by the Diocese to students in its schools as that of reasonable supervision over students which is appropriate to the age of the children and the attendant circumstances. *Id.* Further, that breach of the duty owed must have a connection between the lack of supervision and the incident. *Id.* Finally, the risk of the injury must be foreseeable and preventable. *Id.* Failure to show any of these three factors is fatal to a plaintiff's case.

In the case before us, Holy Family School is a religious institution with standard middle school students. Its building has one hallway with classrooms on each side, with a breezeway located at the rear with Pre-K restrooms. Classrooms for kindergarten or Pre-K students, and a foyer area, is located at the front of the school, where there is another set of bathrooms and administrative offices. The school had a well-established dismissal protocol. The protocol required teachers to stand at their classroom door until all students exit the classroom into the hallway. Additionally, at dismissal, an administrator, Vice Principal Bernadette Derouen, is

5

stationarily positioned at the front end of that hallway where students travel past her in order to exit the building to be picked up at the front of the school. Some students are allowed to travel away from Derouen when they are in aftercare located at the rear of the building. Aftercare is held in a classroom at the rear of the building and supervised by faculty present in the classroom.

According to an incident report, in the record, approximately 10 to 15 minutes after 3:00 dismissal Derouen saw two male students exiting the building at a rear exit directly opposite from her position. She walked to the rear of the hallway to investigate. Near the Pre-K restrooms, located at the rear of the school, Derouen eventually found the alleged victim, T.S., alone in the boys' Pre-K restroom, hiding in a stall with her lower clothing unfastened.

The trial court, with no reasons given, granted the Diocese's motion for summary judgment, dismissing the Diocese. Thus, it is not clear whether the trial court found that no genuine issue of material fact exists in the record regarding the Diocese fulfilling its duty of reasonable supervision over students which was appropriate to the age of the children and the attendant circumstances, or the connection between the Diocese's lack of supervision and the incident, or T.S.'s risk of the injury being foreseeable and preventable. Regardless, the standard of review dictates a de novo review.

Taylor first argues that a genuine issue of material fact exists as to when the incident started and ended and, as such, bears on whether the Diocese fulfilled its duty of reasonable supervision. The record clearly establishes that the incident started after 3:00 dismissal and ended when Derouen found T.S. in the restroom sometime between 3:10 – 3:15. We find that the exact minute of the occurrence is not relevant in this case as the incident, by all accounts in the record, occurred after

dismissal when the reasonableness of the Diocese's supervision at and after dismissal is at issue. Thus, despite the fact that the exact time of this incident is in dispute, the disputed fact is not material as the incident was *after* dismissal.

Next, Taylor argues that the number of male students seen by Derouen is a genuine issue of material fact. Derouen, after seeing either one or two male students at the rear breezeway exit the building, was prompted to investigate. The number of students seen by Derouen has no bearing on the reasonableness of the Diocese's supervision. Thus, the fact in dispute is not material.

Third, Taylor argues that there is a question as to whether any supervision existed during the 10-to-15-minute timeframe of the incident. Taylor correctly points out that Derouen, in her deposition, stated that her duty started at 3:15. This statement by Derouen is an outlier and clear misstatement that is in direct conflict with the incident report wherein Derouen states that her duty is from 2:45 to 3:45. Further, Derouen, via affidavit, averred that she had assumed her dismissal duty post prior to the dismissal bell ringing at 3:00. Finally, according to the testimony of Principal Rogers Griffin, Derouen was generally present at her post for dismissal duty by 2:45.

In looking to Derouen's deposition wherein she stated that her duty started at 3:15, the following context sheds light on the statement:

Q      Okay. And at 3:15 on the date of the incident that's where you saw someone exiting; is that right?

A      Yes, sir.

Q    Who was it that you saw exiting?

A    At first I could not tell exactly because the distance was deep. I could not tell exactly right at first. But I saw movement that was unusual, and I proceeded immediately.

Q    Where was that movement coming from, and where did you see someone coming from?

A    It was in the breezeway area.

Q    Okay. Had they come out from somewhere, like the boys' restroom, on the pre-K side?

A    I do not know.

Q    Okay. Why are you unable to tell where they had come from; did you just not see them before that?

A    Correct.

Q    Okay. And was there anything obstructing your view?

A    No, not at that time.

Q    Okay. And if I understand correctly, this occurred about what time?

A    My duty started at 3:15. By 3:30 - - between 3:30 and 3:45 all students who were to leave were gone. The hallway was clear, relatively clear. So, my visual field was pretty clear.

In looking to the statement made by Derouen, it is clear she is answering the preceding question asking what time she saw the students. Further evidence of this is found in Derouen's incident report wherein she states, "While on duty in the aforementioned position approximately 10 to 15 minutes after dismissal, I spotted two male students seemingly from the middle school exiting from the back of the building[.]"

Given the above, we find no reasonable interpretation of the evidence in the record exists indicating that Derouen started her duty at 3:15 on that date. Further it is not disputed that it was Derouen, while on duty, who stopped the conduct of

8

the students.  Thus, we find there is no genuine issue of material fact as to whether any supervision existed at the time of the incident.

Next, Taylor argues that Derouen's testimony that she was stationary at her post for dismissal duty was in violation of written policy as to the Dioceses' supervision method.  This argument is misguided.

The question before us is whether the Diocese could be found to have breached its duty of reasonable supervision, not whether Derouen violated a handbook's language on the day of the incident.  Regardless, Principal Griffin stated that Derouen's dismissal duty required her to be stationary at her position due to its superior view of the school's entire hallway.

Fourth, Taylor argues that because there is seemingly conflicting testimony as to whether Derouen, at her stationary position, can see the incident area.  As such, Taylor avers that this creates a genuine issue of material fact as to whether the Diocese breached its duty of reasonable supervision.  This argument lacks merit.

For Taylor's argument to have merit, the standard of care owed by the Diocese would require it to have visual supervision of every inch in the school building.  However, that is not the standard of care applicable.  Regardless, it is clear from the record that, given the layout of the school and Derouen's position for dismissal duty, she could see children who were walking to the bathrooms tucked around the corner at the rear of the school, but could not see the actual entrance of the Pre-K bathrooms.  Thus, we find this conflicting testimony pointed out by Taylor, even if resolved in Taylor's favor, still does not rise to a level of a fact worthy of defeating summary judgment.

Finally, as to whether a genuine issue of material fact exists regarding whether the Diocese breached its duty of reasonable supervision, Taylor argues that the policy in place was unreasonable because there is less supervision at dismissal than in the mornings when students arrive at school in that Pre-K bathroom area. Taylor's argument that this protocol constitutes a breach of the Diocese's duty to provide reasonable supervision hinges upon an expert's opinion that this incident could have been prevented had a person been stationed at a different location. We find this argument unconvincing.

Prior to a school day beginning, when students are arriving, a teacher is on duty in the breezeway, where the entrance of the Pre-K bathroom would be visible. At dismissal, no such person is placed on duty at that location. Diocese employees who have served that duty testified that they are on duty at that location, prior to school beginning, to monitor and assist the younger students to enter, as the doors are heavy and children that age often struggle to open them. Contrarily, at dismissal, no students are allowed to exit using those doors to the rear. According to established dismissal protocol, students leaving the school all exit at the front of the building. As such, we find this reasonable supervision given that the students entering the breezeway only in the mornings are in kindergarten or Pre-K.

Moreover, the mere fact that the incident occurred at a location that is supervised at another time does not constitute negligence. The question before us is whether the Diocese violated its duty of reasonable supervision at the time of the incident. The Diocese's duty is not to provide constant supervision of all students to prevent any and all harm that could have been prevented had something been done differently. While a noble goal, established jurisprudence does not require such perfection.

Accordingly, we find no genuine issue of material fact in dispute that could lead to a finding that the Diocese failed to uphold its duty of reasonable supervision in this case.

While this finding is sufficient to uphold the summary judgment granted by the trial court, we will address whether the incident in question was foreseeable. According to the undisputed testimony of Principal Griffin, no other such incidents occurred prior to the one in question. Although a sexual encounter involving T.S. was planned by T.S. and her boyfriend, no person affiliated with the Diocese knew, or could have known of this plan, or that an event such as this was likely to take place. The students involved in the incident had no history, at that time, of a proclivity for such conduct.

Taylor's argument regarding foreseeability is that since the Diocese has a plan in place if such conduct occurs, then such activity is foreseeable. We disagree. Prudent preparation for an incident is not foreseeability in this context. The proper analysis is to determine whether the conduct was foreseeable from these particular students, at this particular time, in this particular manner. The foreseeability requirement is not met just because a school prepares for students to perhaps one day behave as such.

Here, it is clear that the Diocese had discharged its duty of reasonable supervision at the time of the incident, and that the actions of the students involved in this incident were not foreseeable. This incident was the first of its kind at the school, and the first of its kind for the children involved at this school. Accordingly, we find no merit to Taylor's assigned errors or arguments presented, and thus, we find no error by the trial court dismissing the Diocese from this case.

## DECREE

Leticia Taylor and Richard Soularie, individually, and on behalf of their minor child, T.S., raise five assignments of error alleging that the trial court erred in granting Holy Family School and the Diocese of Lafayette's motion for summary judgment. After a de novo review, we find no error by the trial court. Accordingly, we affirm the trial court's judgment in its entirety. All costs of this appeal are assessed to Leticia Taylor and Richard Soularie, individually, and on behalf of their minor child, T.S.

**AFFIRMED.**