465 So.2d 906 (1985)
Arthur Lee HENIX, et al., Plaintiff-Appellant,
v.
W.E. GEORGE, et al., Defendant-Appellee.
No. 16807-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
*907 Glen H. Smith, Shreveport, for plaintiff-appellant.
Rountree, Cox & Guin, by Gordon E. Rountree, Shreveport, for Caddo Parish School Board.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
MARVIN, Judge.
In this action for damages against the school board for injury sustained by a 12-year-old student, we determine whether a teacher's aide charged with supervising and protecting students from injuring themselves breached the standard of reasonable care and supervision.
The student's father appeals the judgment rejecting his demands. We find that the trial court was not clearly wrong in concluding that the school board and its employees were not negligent or at fault under the circumstances and affirm the judgment. We adopt the trial court's reasons and findings and, where appropriate, shall quote or summarize the facts as found by the trial court.

THE ACCIDENT
The accident occurred about 1:30 p.m. about the time a recess ended at Riverside Elementary School, in part a special education center in Shreveport. Plaintiff's son, Gerald, was outside the classroom of the teacher's aide, Ms. Roberson. Inside the classroom was another 12-year-old, Edward George, who said he was being disciplined for unrelated behavior and was required to remain in the classroom at recess. Both children were supposed to go to another *908 area when the recess ended to line up for a physical education class.
Ms. Roberson, returning from a recess duty assignment on the school playground, saw Gerald Henix at the outside door and a nearby window of her classroom. She said Gerald was then jumping up as if trying to look into the classroom through the window, the bottom sill of which was 5'7" from the ground. Through the open window, Ms. Roberson saw Edward George and deduced that he was standing on a counter inside the classroom. She told Gerald, who had quit jumping, that he was not supposed to be outside her classroom, but elsewhere. Acknowledging this, Gerald said that he was waiting for the teacher to take him to his PE class.
Ms. Roberson then entered the classroom and told Edward to get off the counter. When he did not obey she halted her steps toward her desk and again told Edward to get down. She took two or three steps toward her desk and immediately heard glass breaking.
Gerald, contrary to Ms. Roberson's implied instruction, remained near the door and window. He resumed jumping and then attempted to hit the window with his fist. Gerald testified that he swung three times at the window, breaking it on the third time and causing serious and permanent injury to his hand. The window was hinged on its side and may have been shut or partially shut by Edward when Ms. Roberson told him to get down from the counter. Ms. Roberson said the window appeared to be shut after her attention was directed to it by the sound of breaking glass.
Edward said he heard a knock on the door and climbed on the counter to open the window and see who was knocking. Edward denied closing the window and said he backed away from the opening when Gerald started swinging at the window. Edward, Gerald, and Ms. Roberson effectively agreed that the entire incident occurred suddenly, quickly, real fast, and in a matter of seconds. Gerald acknowledged that he knew that if he succeeded in breaking the glass he might be injured, that what he was doing was dangerous, and that he didn't think he was going to hit the window because it was "too far up." Gerald was not a special education student, was in the 6th grade, and was of a sufficient age to have been at fault. Wilkinson v. Hartford Acc. & Indem. Co., 411 So.2d 22 (La.1982); Simmons v. Beauregard Parish School Board, 315 So.2d 883 (La. App. 3d Cir.1975), writ denied. Edward was a special education student in a class for students with a learning disability.

APPELLANTS' CONTENTIONS
Appellants' theory is that Ms. Roberson knew or should have known Gerald and Edward were children with a history of behavior problems in school and, having seen the two boys "roughhousing" in a dangerous way at the window, that she should have exercised her duty and authority to physically separate them and protect Gerald from breaking the window and injuring himself. We adopt the trial court's answer to appellants' argument:
The incident, however, has to be addressed from the standpoint of the precise facts ... to determine the outcome of the case.... Edward George has denied any altercation in the formfrom his standpoint other than that Gerald Henix had hit the window twice; he thought that Gerald was trying to hit him, but he denied that they were having any altercation as between the two of them. It was just that he thought Gerald was hitting at him. He denies cursing Gerald but says that Gerald was calling him names. * * *
What [Gerald] did was start jumping up and down. This Court believes he was hitting at the window, hitting at anything he could find to hit at. Whether he was actually intending to hit Edward George or not I don't know. I think it can be just as well argued that he was as that he was not.
From the evidence it is not entirely clear if he actually jumped up sufficiently far to actually strike the window while it *909 was in an open position, although it is noted that Mrs. Roberson said the window appeared to be closed after she heard the sound of the glass.
Edward being up on the counter didn't cause this accident to occur exactly as perhaps Gerald and his parents would like for it to be described. We think that Mrs. Roberson told Edward to get down. She had taken a step or two back toward her desk; that it would be hard to believe at that juncture that any reasonable person could have foreseen that an accident would have resulted. I am totally convinced that at that point in time she did not believe, nor would a reasonable person have believed it possible for any accident to have occurred. She had already told Gerald that he was in a place where he didn't belong, he needed to be where he did belong.
Gerald knew he had no business being there, and anyone that would argue that to the contrary in my opinion has just simply disregarded all the facts. Gerald also said his classmates lined up outside [another] room [for PE]. He alone went over to [Ms. Roberson's] room.
... But the problem comes in that [Gerald] was jumping up apparently either to strike at Edward or to strike at the window. He ultimately succeeded, but when he did so it was under such circumstances that there was nothing that Mrs. Roberson could have done under these circumstances that could conceivably have resulted in a different outcome.
As I say, I reiterate I could not hold from these facts that he struck the window before or after it was closed. But I am convinced he struck the window and that it did not strike him.... It is conceivable at least to me, at least arguable, that he could actually have jumped up and hit the window after Edward had pulled his head from the opening. It is also conceivable he could have struck the window after Edward had closed it preparatory to getting down to do exactly what Mrs. Roberson told him to do.
Now, Edward tells a different version. Gerald tells a different version. Mrs. Roberson's version is she told Edward to get down; she expected him to get down; wouldn't have been terribly shocked if he hadn't. But under those circumstances, there was no harm to be certainly anticipated by a reasonable person. She had not seen Gerald throwing licks or attempting to strike [Edward]. She had just seen him outside jumping up and down looking in the room. That is the way you see into that room when you are about his age and height. He would have had to jump up to see. And he said himself he couldn't see totally into the room even when he was jumping up. So Mrs. Roberson had noin my opinion no reason to expect that Gerald would have slammed his fist against the window or anything else.
We don't find that she was negligent when she gave the instructions to Edward to get down off that counter, turned and took a step or two. If, to the contrary, she had not turned and taken a step or two but, in fact, had taken more steps and actually physically grabbed Edward, this type of accident could still nevertheless have occurred without anything on this earth that she could have done to prevent it.
My determination of this case is based entirely on the facts of what happened... at the time of the accident.
The trial court's findings and observations are supported by the record and by the law.
We agree that Ms. Roberson was not negligent either when she left Gerald outside or when she turned away from Edward inside and stepped toward her desk after telling him to get down. We also agree that if Ms. Roberson instead had immediately grabbed Edward to remove him from the counter, Ms. Roberson could not have prevented the accident. Gerald was hitting at the window for the third time in a very short while, and not at Edward, according to Gerald's testimony. A reasonable aide would not have perceived any substantial risk of self-injury to a child on the outside of the classroom even though that child might before have been jumping up and down in front of the window. *910 Ms. Roberson said that when she entered the room Edward had his head "out of the window." She had just before seen him standing in the window when she was outside. The greater risk of self-injury was to Edward, the learning-disabled child, and Ms. Roberson acted reasonably in turning her concern and her actions away from the non-disabled Gerald on the outside and toward Edward under these circumstances. In short, we agree Ms. Roberson did not breach her duty to maintain reasonable supervision and discipline under the recited circumstances.
We acknowledge that a school board has been held negligent for failing to maintain reasonable supervision and discipline to prevent a reasonably foreseeable risk of injury that the supervising authorities knew, or should have known about.[1] The individual circumstances of each case, however, pronounce the particular result. We cannot agree with appellant that Gerald and Edward, notwithstanding that both had behavior problems, had demonstrated a propensity to engage in the very act that injured Gerald. The trial court did not so find and neither do we.
It is impossible for school authorities to directly supervise every child. Nash v. Rapides Parish School Board, 188 So.2d 508 (La.App. 3d Cir.1966). School authorities are required to exercise and maintain only the supervision and discipline that is expected of a reasonable person under the circumstances of the particular case. Partin v. Vernon Parish School Board, 343 So.2d 417 (La.App. 3d Cir.1977), writ refused. Injury from horseplay between discerning students which, at some stage may pose an unreasonable risk of harm to the participants, does not automatically and of itself render the supervising authority liable. The risk of injury must also be reasonably foreseeable, constructively or actually known, and preventable if the requisite degree of supervision had been exercised. Prier v. Horace Mann Ins. Co., 351 So.2d 265 (La.App. 3d Cir.1977), writs denied. See also CC Art. 2320.[2]
Having found that the school authorities were not negligent or at fault, we do not reach appellant's argument concerning the effect of the settlement between Gerald's father and the liability insurer of Edward George. See Garrett v. Safeco Insurance Co., 433 So.2d 209 (La.App. 2d Cir.1983).
At appellant's cost, the judgment appealed is AFFIRMED.
NOTES
[1] Appellant cites such cases as: Santee v. Orleans Parish School Bd, 430 So.2d 254 (La.App. 4th Cir.1983); Gibbons v. Orleans Parish School Bd., 391 So.2d 976 (La.App. 4th Cir.1980); Carson v. Orleans Parish School Bd., 432 So.2d 956 (La.App. 4th Cir.1983); Lawrence v. Grant Parish School Bd., 409 So.2d 1316 (La.App. 3d Cir. 1982), writ denied; Roberts v. St. Bernard Parish School Bd., 427 So.2d 676 (La.App. 4th Cir. 1983), writ denied; Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App. 3d Cir. 1983), writs denied; Foster v. Houston General Ins. Co., 407 So.2d 759 (La.App. 2d Cir. 1981), writ denied; and Simmons, supra.
[2] A teacher is answerable for the damage done by the student under her supervision, but this responsibility only attaches when the teacher might have prevented the act which caused the damage and did not do it. If Edward George was 10 percent comparatively at fault in causing Gerald's injury, as the trial court parenthetically commented, the trial court's finding that there was nothing Ms. Roberson could have done to prevent the accident is supported in fact and in law. Under these circumstances, liability does not attach to the teacher. CC Art. 2320.