745 So.2d 770 (1999)
Alberta Bennett RAMBO, et al., Plaintiffs-Appellants,
v.
WEBSTER PARISH SCHOOL BOARD and Otis Thomas, Defendants-Appellees.
No. 32,447-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
Rehearing Denied December 2, 1999.
Writ Denied February 18, 2000.
*771 Maldrick Bright, Wolfe, Begoun & Pick by Mark R. Wolfe, Michael J. Begoun, Daniel Pick, New Orleans, Counsel for Appellants.
Cook, Yancy, King & Galloway by Kenneth Mascagni, Shreveport, Charles McConnell, Benton, Counsel for Appellees.
Before BROWN, WILLIAMS and KOSTELKA, JJ.
BROWN, J.,
D.C.'s paternal grandmother/guardian, Alberta Rambo, individually and on behalf of her grandson, filed suit against the Webster Parish School Board, its insurer, Scottsdale Insurance Company, Otis Thomas and Faye Newsom, the principal of Minden High School, seeking damages arising out of D.C.'s sexual assault by a school janitor. Plaintiffs urged two theories of recovery against the school board and the principal: negligent supervision and vicarious liability for the custodian's intentional acts. The trial court found in favor of defendants. We affirm.

Facts and Procedural Background
In October 1993, eight-year-old D.C. was a student at Richardson Elementary School in Minden, Louisiana. To get to school each morning, D.C. and 15-20 other elementary students, whose homes were near Minden High School, would board a bus at the high school. The bus left from the high school at approximately 7:10 a.m. each day to take the children to the elementary school. The youngsters had been told on several occasions that they should arrive at the high school no earlier than *772 7:00 a.m. to board the bus. In addition to the elementary students, two or three parents usually waited at the high school for the bus's arrival.
During the time period at issue, Faye Newsom was the principal at Minden High School, Marvin Jones was the assistant principal and Mr. Riggs was a high school teacher. In accordance with a duty schedule established by Principal Newsom, Asst. Principal Jones would arrive at the high school at 6:30 a.m., Mr. Riggs would arrive at 6:45 a.m. and the principal herself would arrive at 7:00 a.m.
During this same period of time, Otis G. Thomas was a janitor at Minden High School. Thomas had been employed by the Webster Parish School Board for approximately 18-20 years and had an excellent record of service prior to the incident involved in this litigation. On October 25, 1993, Thomas entered a plea of guilty to indecent behavior with a juvenile and was given a five-year hard labor sentence. At the guilty plea hearing, Thomas admitted to inappropriate contact between himself and D.C. This contact occurred sometime during the 1993 school year between the hours of 6:45 a.m. and 7:10 a.m. in a room at the high school commonly referred to as the janitor's washroom. The record does not indicate the number of times that this improper contact occurred, nor is it clear what acts were involved; at the very least, there was inappropriate touching and fondling.
Bench trial was held on July 20-22, 1998 and the matter was taken under advisement. On February 8, 1999, in accordance with its written reasons of October 15, 1998, the trial court rendered judgment in favor of defendants dismissing plaintiffs' claims.[1] Plaintiffs have appealed.

Discussion

Liability for Negligent Supervision
A school board, through its agents and teachers, has a duty to adequately supervise students and thereby protect them from injury. Coleman v. Joyner, 593 So.2d 451 (La.App. 2d Cir. 1992), writ denied, 595 So.2d 657 (La. 1992). This duty to supervise, however, does not make the school board the insurer of the safety of school children. Adams v. Caddo Parish School Board, 25,370 (La. App.2d Cir.01/19/94), 631 So.2d 70, writ denied, 94-0684 (La.04/29/94), 637 So.2d 466; Hunter v. Caddo Parish School Board, 627 So.2d 772 (La.App. 2d Cir. 1993); Coleman, supra. Furthermore, constant supervision of all students is not possible, nor is it required, for educators to discharge their duty to provide reasonable supervision. Adams, supra; Collins v. Bossier Parish School Board, 480 So.2d 846 (La.App. 2d Cir.1985), writ denied, 481 So.2d 1350 (La.1986); Henix v. George, 465 So.2d 906 (La.App. 2d Cir. 1985).
School boards are required to exercise and maintain only the supervision that is expected of a reasonable person under the circumstances of the particular case. As noted by this court in Coleman, supra, they are not required to protect against risks that are unforeseeable. See also Turner v. Caddo Parish School Board, 252 La. 810, 214 So.2d 153 (1968); Henix, supra. While there is generally no duty to supervise the school grounds after school hours or during the summer, the school must provide supervision for children who are waiting on the grounds for the school bus. Hickingbottom v. Orleans Parish School Board, 623 So.2d 1363 (La. App. 4th Cir.1993), writ denied, 629 So.2d 1173 (La.1993); Nash v. Rapides Parish School Board, 188 So.2d 508 (La.App. 3d Cir.1966).
In the instant case, the trial court found that the supervision provided was adequate. Specifically, the court found that the presence on campus of three experienced *773 educators (together with two or three parents who waited with their children) was reasonable supervision. We will examine the evidence to determine whether this conclusion is factually supported by the record.
Faye Newsom, who at the time of trial had retired from a long career of employment with the Webster Parish School Board, was the principal at Minden High School at the time of this incident. In accordance with applicable School Board policies and procedures, the schedule established by Principal Newsom for early morning duty entailed the arrival of Asst. Principal Jones at 6:30 a.m. (30 minutes before the first elementary student was to arrive on campus), Mr. Riggs at 6:45 a.m. and Principal Newsom herself at 7:00 a.m. Their duty included overseeing or supervising the bus stop area. Ms. Newsom's office was at the front of the building near the entrance by the bus stop. Mr. Jones' office provided a view of the bus stop area. Mr. Riggs' classroom was at the end of the hall near the cafeteria.
At 7:00 a.m., the only students on the high school campus were the 15-20 children waiting for the bus to take them to Richardson Elementary and other area schools. Ms. Newsom testified that the bus usually arrived at 7:10 a.m. to pick up the children. It was Minden High School policy that the youngsters were not to arrive on the high school campus until 7:00 a.m. and they were not to enter the buildings on campus unless the temperature was below freezing. When asked whether she ever saw D.C. or other children inside the high school, Ms. Newsom stated that she did not because she was outside. As noted above, Mr. Jones' office windows provided a view of the area in front of the bus stop and he was able to observe students coming up the sidewalk to the waiting area.
A school board has a duty to provide reasonable supervision commensurate with the age of the children and the attendant circumstances. Hickingbottom, supra. As found by the trial court, under the facts and circumstances of this particular case (three educators on early morning duty on campus with responsibility of supervision/overseeing 15-20 young students at the bus stop), we likewise conclude that plaintiffs failed to show that the school did not exercise reasonable supervision. This assignment of error is meritless.

Vicarious Liability
Plaintiffs also assert on appeal that the trial court erred in failing to find the School Board vicariously liable for the intentional torts of its employee, Otis Thomas.[2]
The principle of vicarious liability is codified in La.C.C. art. 2320, which provides that an employer is liable for the tortious acts of its employees "in the exercise of functions in which they are employed." While the course of employment refers to time and place, the scope of employment examines the employment-related risk of injury. Russell v. Noullet, 98-0816 (La.12/01/98), 721 So.2d 868; Baumeister v. Plunkett, 95-2270 (La.05/21/96), 673 So.2d 994; Benoit v. Capitol Manufacturing Co., 617 So.2d 477 (La.1993). The inquiry requires the trier of fact to determine whether the employee's tortious conduct was so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests. LeBrane v. Lewis, 292 So.2d 216 (La.1974).
In LeBrane, supra at 218, the supreme court set forth the following factors for considering whether an employer should be liable for the tortious acts of its employee:
(1) whether the tortious act was primarily employment rooted;

*774 (2) whether the violence was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
As noted by the court in Baumeister, supra, and Miller v. Keating, 349 So.2d 265 (La.1977), this does not mean that all four of these factors must be present before liability may be found. An employer is not vicariously liable merely because his employee commits an intentional tort on the employer's premises during working hours. Baumeister, supra; Scott v. Commercial Union Insurance Co., 415 So.2d 327 (La.App. 2d Cir.1982), citing Bradley v. Humble Oil & Refining Co., 163 So.2d 180 (La.App. 4th Cir.1964).
The question of whether an employee's tortious conduct was sufficiently employment-related that the court should impose vicarious liability upon the employer is a mixed question of law and fact, and the trial court's resolution of that question is entitled to great deference on review under the manifest error standard. Russell, supra; Reed v. Wal-Mart Stores, Inc., 97-1174 (La.03/04/98), 708 So.2d 362. The reviewing court must determine whether the evidence, viewed in the light most favorable to the prevailing party, was sufficient for a rational trier of fact to have found that the tortious conduct was or was not employment-related. The reviewing court can only reverse a lower court's factual findings when the record reflects that a reasonable basis does not exist for the finding and the record establishes that the finding is clearly wrong. Baumeister, supra.
At the outset, we find that plaintiffs have established the last two LeBrane factors, that is, the tortious acts occurred during the course of employment; Thomas's inappropriate sexual conduct clearly occurred on the school campus during school hours.
Neither the first nor the second LeBrane factor, however, is present in this case. The likelihood that a high school janitor will sexually molest an 8-year-old boy, present on the high school campus solely for the purpose of catching a bus to his elementary school, is not a risk fairly attributable to the performance of his custodial duties. Clearly, a janitor's responsibilities, which do not involve teaching, supervising, or otherwise interacting with students, do not include inappropriate sexual conduct with children. Furthermore, it is not at all foreseeable from the perspective of the School Board or Principal Newsom, in light of the absolute lack of evidence of any such previous behavior or propensity on the part of the janitor, that such an incident would take place on the high school campus during school hours. We conclude, as did the trial court, that Thomas's actions were not reasonably incidental to the performance of his employment duties.
Lastly, we do not find that plaintiffs established the final LeBrane factor, that the custodian's tortious act was primarily employment rooted. It cannot be seriously disputed that Thomas's actions did not further the School Board's business and were not incidental to the performance of his custodial duties. Thomas's inappropriate sexual behavior with D.C. was entirely extraneous to his employer's interests.
We find no error in the trial court's finding that the School Board (and Ms. Newsom) are not vicariously liable for the sexual abuse of D.C. by Otis Thomas. This assignment of error is without merit.

CONCLUSION
Because the trial court's decision was reasonably supported by the evidence, we cannot not find manifest error. The judgment rejecting plaintiffs' demands is affirmed.
AFFIRMED.
WILLIAMS, J., dissents with written reasons.
WILLIAMS, J., dissenting.
I respectfully dissent.
*775 The majority affirms the trial court's rejection of the plaintiffs claims by concluding in part, that the School Board did not breach its duty to supervise the elementary students waiting at the bus stop. The trial court found, and the majority agrees, that because three school educators were present at the school, the supervision afforded the elementary students was reasonable. There is absolutely no testimony in this record to support such a finding. While it is clear that all three educators were present on the campus, the trial court did not find, nor does the record support a finding, that either of the educators was present at the bus stop and actually supervising these children.
In fact, the record reflects that just the opposite occurred. According to the principal, Mrs. Newsom, on several occasions, she had observed eight-year-old D.C. at the school earlier than the designated time. She also testified that although there was a designated waiting area for the elementary bus students, on numerous occasions, she had observed D.C. on the school grounds wandering away from the designated waiting area or inside of the high school. On at least one occasion, Mrs. Newsom had been informed that D.C. had been seen on the school grounds prior to 7:00 a.m. walking with, or following, Otis Thomas.
When Mrs. Newsom was questioned during the trial concerning the school's duty to supervise the bus children, the following exchange occurred:
Q Were you responsible for supervising those kids?
A No, as far as I'm concerned I wasn't. I was supervising the Minden High School area and the bus stop there, where those kid came and got on the bus, I was supervising.
Q Well, who was responsible for supervising those kids?
A I don't know that anyone was held responsible for that.
R.Vol. II, Trial Transcript, p. 483.
Clearly, the trial court erred in finding that there was reasonable supervision of these children since three of the educators were on the school campus and some of the parents were at the bus stop with their children.
Here, the school board breached its duty to these young children by failing or refusing to provide reasonable supervision while they were at the bus stop. Hickingbottom v. Orleans Parish School Bd., 623 So.2d 1363 (La.App. 4th Cir.1993). The trial court's and majority's conclusion to the contrary is not supported by the record. Had one of the educators been supervising the children, D.C. would have been required to stay in the designated area, during the designated time. Moreover, Otis Thomas, the actual perpetrator of the molestation, would have been reluctant to approach or lure away any of the supervised children.
The then eight-year-old victim testified that the molestation occurred on several occasions and ended only after his grandmother noticed blood in his pants and alerted the authorities. The school breached its duty to protect this child from injury and harm and should be held liable. The trial court was clearly wrong in finding otherwise.
I would reverse the trial court's judgment and render judgment assessing the school board with 20% of the fault and Otis Thomas with 80% of the fault.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY and KOSTELKA, JJ.
Rehearing Denied.
WILLIAMS and STEWART, JJ., would grant rehearing.
NOTES
[1] On November 13, 1996 plaintiffs obtained a default judgment against Otis Thomas for $558,441.10.
[2] Plaintiffs urged in the trial court vicarious liability on the part of Principal Newsom, but apparently conceded this argument on appeal, in light of the fact that the School Board, not Ms. Newsom, is the janitor's employer.