# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-640


**DAVID TRAVASOS, ET AL.**

**VERSUS**

**LAFAYETTE PARISH SCHOOL BOARD, ET AL.**



**\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
### FIFTEENTH JUDICIAL DISTRICT COURT
### PARISH OF LAFAYETTE, NO. C-2013-1995
### HONORABLE DAVID MICHAEL SMITH, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## D. KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of D. Kent Savoie, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**STILES, J., concurring in part and dissenting in part with reasons.**


### AFFIRMED IN PART, AS AMENDED; AND REVERSED IN PART.

**K. Kyle Celestin**
**Harold James Adkins**
**Alejandro R. Perkins**
**Hammond, Sills, Adkins, Guice, Noah, & Perkins, LLP**
**2431 S. Acadian Thruway, # 600**
**Baton Rouge, Louisiana 70808**
**(225) 923-3462**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Lafayette Parish School Board**

**Kraig Thomas Strenge**
**Post Office Box 52292**
**Lafayette, Louisiana 70505-2292**
**(337) 261-9722**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **David Travasos**
     **Jamie Travasos**
     **Michael Travasos**

**Stephanie JohnLouis**
**In Proper Person**
**411 Woodvale Avenue, #104 G**
**Lafayette, Louisiana 70503**
**(337) 315-2562**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Stephanie JohnLouis**

**SAVOIE, Judge.**

After a bench trial, the trial court rendered judgment in favor of Plaintiffs David Travasos, Jamie Travasos, and Michael Travasos, awarding damages totaling $450,340.00. Defendant Lafayette Parish School Board now appeals. For the following reasons, we affirm in part, as amended, and reverse in part.

## FACTS AND PROCEDURAL HISTORY

In the spring of 2012, while in the seventh grade, Michael Travasos was sexually molested by Desmond JohnLouis on the school bus. This happened on numerous occasions while riding the school bus to L.J. Allemon Middle School, as well as on school property. Michael repeatedly asked the school bus driver to re-assign his seat on the bus away from Desmond. This request was refused. When these actions were discovered by Michael's parents, David and Jamie Travasos, they were immediately reported to the assistant principal at the middle school. A conference was held with the principal and a Lafayette Police Officer wherein Desmond admitted to his behavior. Michael and Jamie Travasos were told that Desmond had been expelled from the school. Michael and Jamie agreed to not press charges against Desmond due to his expulsions and assurances from the school that he would not be allowed to return to L.J. Allemon Middle School.

During the summer of 2012, Michael and Jamie discovered that Desmond was allowed to re-enroll at L.J. Allemon Middle School. After a meeting with the assistant principal, David learned that Desmond was scheduled to be in several classes with Michael in the fall. The assistant principal assured David that Desmond would not be allowed to ride the same bus as Michael, and they would not have any classes together. In addition, David made several calls to Defendant's transportation office, and he was assured that Michael and Desmond

would not be riding the same bus. After school began, David and Jamie noticed attitude changes in Michael, and his grades began to drop. Michael's health and growth began to suffer.

In November 2012, Desmond was placed in Michael's social studies class. In April 2013, David and Jamie found out that Desmond had been riding the same school bus with Michael for the entire school year, despite assurances by the middle school and Defendant.

As a result, David and Jamie Travasos filed suit, individually and on behalf of Michael Travasos, who was a minor at the time, against the Lafayette Parish School Board.

A bench trial was held on February 5, 2020. The trial court allowed counsel thirty days to file post-trial briefs. In March 2020, the courthouse was closed due to the Covid-19 pandemic. Judgment was signed October 5, 2022, in favor of Plaintiffs and against Defendant Lafayette Parish School Board, awarding damages in the amount of $450,348.00. Lafayette Parish School Board now appeals.

## PLAINTIFFS' OBJECTION

Plaintiffs object to the trial court's grant of Defendant's Amended Motion and Order for Devolutive Appeal. The original judgment in this case, along with written reasons, was rendered on October 5, 2022. On October 13, 2022, Plaintiffs filed a Motion to Supplement and/or Amend Judgment or in the Alternative, Motion for New Trial, requesting that the trial court amend the judgment to include court costs and legal interest. This motion was set for hearing on January 17, 2023. After the hearing, the trial court signed the Amended Judgment on January 20, 2023, re-stating the original judgment and adding a paragraph taxing Defendant with legal interest and court costs. Thereafter, Defendant filed a Motion and Order

for Devolutive Appeal, appealing the January 20, 2023 Judgment, which was signed by the trial court on February 2, 2023. Defendant then filed its Amended Motion and Order for Devolutive Appeal in the trial court on September 21, 2023, attempting to appeal both the October 5, 2022 and January 20, 2023 Judgments. The trial court granted the amended motion for appeal, signing the order on September 22, 2023.

Plaintiffs argue that the trial court was divested of jurisdiction once the original Motion and Order for Devolutive Appeal was signed on February 2, 2023, citing La.Code Civ.P. art 2088. Louisiana Code of Civil Procedure Article 2088(A) states:

> The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal.

Therefore, Plaintiffs argue that the trial court did not have jurisdiction to sign the Amended Motion and Order for Devolutive Appeal. Plaintiffs contend that the January 20, 2023 Judgment only concerns the issues of legal and interest and court costs. As a result, Plaintiffs argue that court costs and legal interest are the only issues properly before this court.

We agree with Plaintiffs that the trial court was divested of jurisdiction once the Motion and Order for Devolutive Appeal was signed on February 2, 2023; however, we disagree that the only issues before this court are court costs and legal interest.

Plaintiffs in this case filed a Motion to Supplement and/or Amend Judgment or in the Alternative, Motion for New Trial. "[A] final judgment may be amended at any time to alter the phraseology of the judgment or to correct deficiencies in the

3

decretal language or errors of calculation." La.Code Civ.P. art. 1951. However, "[a] final judgment may not be amended under this Article to change its substance." *Id.* "It is well established that Article 1951 contemplates that correction of a 'clerical error' in a final judgment, but does not authorize substantive amendments." *Denton v. State Farm Mut. Auto. Ins. Co.*, 08-483, p. 6 (La. 12/12/08), 998 So.2d 48, 52.

"An amendment to a final judgment to add interest is a substantive change which is not permitted under LSA-C.C.P. art. 1951." *Suprun v. Louisiana Farm Bureau Mut. Ins. Co.*, 09-1555, p. 11 (La.App. 1 Cir. 4/30/10), 40 So.3d 261, 269. A substantive alteration is in violation of La.Code Civ.P. art. 1951. *Id.* "'Substantive amendments to judgments can be made only by consent of the parties or after a party has successfully litigated a timely application for new trial, an action for nullity, or a timely appeal.'" *A.M.C. v. Caldwell*, 17-628, p. 9 (La.App. 3 Cir. 2/15/18), 239 So.3d 948, 957 (quoting *Greene v. Succession of Alvarado*, 15-1960, p. 29 (La.App. 1 Cir. 12/27/16), 210 So.3d 321, 339).

"'A pleading is considered a motion for new trial if it requests a substantive modification of the judgment and is filed within the delays applicable to a motion for new trial.'" *Id.* (quoting *Greene*, 210 So.3d at 339). In the present case, the Motion to Supplement and/or Amend Judgment or in the Alternative, Motion for New Trial was filed within the time delays for a motion for new trial. *See* La.Code Civ.P. art. 1974. As such, we will treat the motion as a motion for new trial. *See Katz v. Katz*, 412 So.2d 1291 (La.1982); *See also A.M.C.*, 239 So.3d 948.

Louisiana Code of Civil Procedure Article 2087 sets forth the delay for taking a devolutive appeal. That Article states:

4

A. Except as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of any of the following:

(1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.

(2) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict, as provided under Article 1914.

B. When a devolutive appeal has been taken timely, an appellee who seeks to have the judgment appealed from modified, revised, or reversed as to any party may take a devolutive appeal therefrom within the delays allowed in Paragraph A of this Article or within ten days of the mailing by the clerk of the notice of the first devolutive appeal in the case, whichever is later.

C. When one or more parties file motions for new trial or for judgment notwithstanding the verdict, the delay periods specified herein shall commence for all parties at the time they commence for the party whose motion is last to be acted upon by the trial court.

D. An order of appeal is premature if granted before the court disposes of all timely filed motions for new trial or judgment notwithstanding the verdict. The order becomes effective upon the denial of such motions.

"An application for new trial does not interrupt the delay for applying for a new trial or the delays for appealing unless the application is timely." *Everett v. Baton Rouge Student Housing, L.L.C.*, 10-856, p. 4 (La.App. 1 Cir. 5/6/11), 64 So.3d 883, 886, *writ denied*, 11-1169 (La. 9/16/11), 69 So.3d 1149. Because Plaintiffs filed a timely motion for new trial, the appeal delays were interrupted. The motion was granted, and the Amended Judgment was filed January 20, 2023. Defendant filed a timely appeal of the January 20, 2023 Judgment.

Defendant's original request for appeal referenced the January 20, 2023 Judgment and not the October 5, 2023 Judgment. Plaintiffs maintain that, because its Motion to Supplement and/or Amend Judgment or in the Alternative, Motion

for New Trial only concerned the issues of court costs and legal interest, those are the only issues on appeal before this court. We disagree.

"[T]he jurisprudence provides that the granting of a new trial sets aside the original judgment, which cannot thereafter afford the basis of a plea of res judicata or an appeal." *In Re Transit Mgmt. of Se. Louisiana, Inc.*, 04-632, p. 10 (La.App. 4 Cir. 10/20/06), 942 So.2d 595, 600. "The judgment from the new trial becomes the final judgment from which an appeal may be taken." *Id.*

In the present case, the February 2, 2023 Amended Judgment re-stated the rulings of the original judgment relating to fault and damages, and it added a paragraph assessing Defendant with legal interest and court costs. This judgment, as a whole, is the final judgment from which this appeal is now taken.

Based on the foregoing, Plaintiffs' objection is sustained insofar as we find the trial court lacked the jurisdiction to grant the Amended Motion and Order for Devolutive Appeal. The original Motion and Order for Devolutive Appeal signed by the trial court on February 2, 2023, is properly before this court, appealing the January 20, 2023 Judgment in its entirety.

## ASSIGNMENTS OF ERROR

1. The Trial Court committed legal error by imposing a duty on the School System that is not grounded in statute or jurisprudence.

2. The Trial Court erred in finding that the Appellees suffered injury that was causally related to the actions of the School System.

3. The Trial Court failed to allocate fault to the admitted tortfeasor and co-defendant Desmond JohnLouis, through Stephanie JohnLouis.

4. The Trial Court's award of $250,000 for general damages for Michael Travasos was excessive and a clear abuse of discretion.

5. The Trial Court's award of $50,000 for general damages for Jamie Travasos was excessive and a clear abuse of discretion.

6

6. The Trial Court's award of $50,000 for general damages for David Travasos was excessive and a clear abuse of discretion.

7. The Trial Court's award of $26,485.00 for Michael Travasos' School Tuition was improper and a clear abuse of discretion.

8. The Trial Court erred in failing to allocate fault to the other tortfeasors.

## LAW AND DISCUSSION

### I.  *Standard of Review*

In *Hebert v. State Farm Fire and Casualty Company*, 21-10, pp. 2–3 (La.App. 3 Cir. 8/4/21), 325 So.3d 1090, 1093, *writ denied*, 21-1358 (La. 11/17/21), 327 So.3d 992, this court explained:

> The standard of appellate review of factual determinations is manifest error. *Stobart v. State, Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). When reviewing factual determinations for manifest error, the issue is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was reasonable. *Id.* If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. *Id.* Additionally, where factual findings are based on determinations regarding the credibility of witnesses, great deference is afforded to those factual findings under the manifest error standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Factual findings based on the fact finder's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous. *Id.* This rule applies equally to the fact finder's evaluation of expert testimony. *Lasyone v. Kansas City S. R.R.*, 00-2628 (La. 4/3/01), 786 So.2d 682.

The Louisiana Supreme Court discussed the liability of a school board in *Wallmuth v. Rapides Parish School Board*, 01-1779 (La. 4/3/02), 813 So.2d 341.

The supreme court stated:

> The court of appeal set out what we believe is the correct standard of liability regarding the liability of a school board for the actions of its students under La. C.C. art. 2320:
>
> > A school board, through its agents and teachers, owes a duty of reasonable supervision over students. La.

7

> Civ.Code art. 2320; *Adams v. Caddo Parish School Bd.,* 25,370 (La.App. 2 Cir. 1/19/94), 631 So.2d 70, *writ denied,* 94,684 (La.4/29/94), 637 So.2d 466. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. *Jackson v. Colvin,* 98–182 (La.App. 3 Cir. 12/23/98), 732 So.2d 530, *writ denied,* 99–228 (La.3/19/99), 740 So.2d 117. This duty does not make the school board the insurer of the safety of the children. *Id.* Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision. *Adams,* 631 So.2d 70.
>
> Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. *Id.* "Injury from horseplay between discerning students which, at some stage may pose an unreasonable risk of harm to the participants, does not automatically and of itself render the supervising authority liable." *Henix v. George,* 465 So.2d 906, 910 (La.App. 2 Cir.1985). Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of students, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. *Id.*

*Wallmuth*, 813 So.2d at 346.

## II.   *Assignment of Error Number One – Legal Error*

Defendant first submits that the trial court committed legal error because it held that Defendant "breached its duty by failing to expel Desmond for the disciplinary infractions that he committed prior to grabbing Michael's genitals."

In its Reasons for Ruling, the trial court stated:

> This is an action seeking damages for physical, mental, and emotional pain and suffering caused by Desmond JohnLouis['s] assault on Michael Travasos.  Mr. JohnLouis ultimately admitted to the allegations and was subsequently removed from the school for the remainder of the school year.  No criminal charges were sought by the

8

plaintiff's family because they were assured the perpetrator had been removed from the victim's school.

The trial court explained Defendant's duty thus:

> For the School Board to be held liable, it must be shown that the School Board breached its duty to provide "reasonable, competent supervision appropriate to the age of the children and the attendant circumstances, "and that the breach of that duty is causally connected to the damages sustained.["]

This is the correct standard of liability for this case as set forth by the Louisiana Supreme Court in *Wallmuth*, 813 So.2d 341. When stating the factual basis for finding that Defendant breached its duty, the trial court did list lack of Desmond's expulsion as a reason. After stating Defendant's duty, the trial court found the following:

> The plaintiffs have clearly met their burden of proof on the breach of the School Board's duty. This case is focused on the actions taken after Principal Aloisio and Vice Principal Hebert having actual knowledge of the actions of Desmond JohnLouis toward multiple students, and their failure to take the appropriate disciplinary actions at that time. There is no question the incidents described by the plaintiff occurred. The offender, Desmond JohnLouis, admitted to the allegations when questioned. Following two incidents where the authorities could have recommended expulsion and it could be argued that expulsion was mandatory on those offenses, Desmond JohnLouis went on to assault two more students to which they again did not follow the LPSS Middle School Discipline Matrix and instead sent the perpetrator home for the remainder of the school year on a 10 day out of school suspension.
>
> The following school year, the authorities continued to fail in their reasonable competent supervision of the children. Michael's parents were assured the boys would be kept separate. [] However, the school enrolled the boys in the same classes, classrooms, and allowed to play on the same sports teams, thereby causing interaction between Michael Travasos and his offender. The school did not adjust the boys['] schedule until they were approached about the problem and then failed to follow up on the situation. The plaintiffs eventually rectified the situation themselves by removing the victim from the school and placing him in private school.

Based on these factual findings, the trial court found that Defendant breached its duty.

In *Vaughn ex rel. Vaughn v. Orleans Parish School Board*, 01-556 (La.App. 4 Cir. 11/28/01), 802 So.2d 967, *writ denied*, 02-05 (La.6/7/02), 818 So.2d 773, a second-grade student at Lafayette Elementary School suffered a sexual assault while in the classroom. The trial court found that the School Board's employee, the teacher, failed to adequately supervise the class. The appellate court explained:

> In the present suit, we are confronted with a second grade student who was threatened and sexually assaulted in a classroom at an elementary school. He was forced to perform a sexual act on another student after being bullied by fellow students. The School Board does not challenge the veracity of these allegations. Moreover, the trail court believed the victim's testimony and other evidence in the record supports these findings.

*Id.* at 969.

Finding that the trial court did not err in determining that the teacher failed to reasonably supervise the class, the appellate court concluded that "[r]egardless of her presence or absence, a sexual assault occurred in her classroom while she was ostensibly in charge of these grade school children." *Id.* at 970.

In *Doe ex rel. Doe v. DeSoto Parish School Board*, 39,779 (La.App. 2 Cir. 6/29/05), 907 So.2d 275, *writ denied*, 05-2020 (La. 2/10/06), 924 So.2d 167, Doe was a sixteen-year-old girl who was sexually assaulted by five members of the basketball team while riding on a school bus that was transporting them to and from a basketball game. A jury found in favor of the plaintiffs, concluding that the school board had breached its duty, and the appellate court affirmed. The appellate court reviewed the applicable jurisprudence and found that *Wallmuth*, 813 So.2d 341, and much of its progeny, "found no liability on the part of school boards for fights occurring between students, or accidents at school, either because the school

board did not breach its duty of reasonable supervision, or because the school board or school personnel could not have prevented the incident from occurring." *Doe ex rel. Doe*, 907 So.2d at 281. The *Doe* court distinguished these cases and determined that those cases "largely focused on a spontaneous act on the part of the students involved, one that would not have been preventable absent constant supervision." *Id.* The *Doe* court ultimately found that the sexual assault that occurred on the school bus "was not a 'spontaneous act' that could not have been prevented with adequate supervision on the part of the coaches." *Id.* at 282.

As stated above, we find that the trial court applied the appropriate standard of liability to this case, and it did not commit legal error. Therefore, we will utilize the manifest error standard of review. Based on the jurisprudence and evidence, we do not find that the trial court manifestly erred in finding that Defendant breached its duty. This case involves a sexual assault which occurred numerous times while on a school bus. During this time, the evidence shows that the same offender bullied and assaulted other students as well. The offender admitted to the sexual assault while in the presence of a law enforcement officer and the principal of the middle school. Additionally, Desmond JohnLouis was allowed to continue at the same school, in the same activities, in the same classes, and on the same school bus with the victim despite numerous assurances to the contrary. This assignment has no merit.

### III. *Assignment of Error Number Two – Causal Relationship*

Defendant next argues that the trial court erred in finding that Michael Travasos suffered injury due to Defendant's actions. Defendant contends that "no medical professional causally connected the incidents between Michael and Desmond with Michael's hormone deficiency."

Regarding causal connection, the trial court found:

[T]he plaintiffs have met their burden to show the causal connection between the breach of this duty and the resulting damages. Michael Travasos suffered from physical, mental, and emotional pain during and following the assaults. The unrebutted expert testimony clearly relates the worsening of Michale Travasos' hormone deficiency to the stresses placed upon him. Testing ruled out any other physical caused [sic] other than the stresses placed on the victim during his 7th and 8th grade years by the offender. The unrebutted testimony established that the situation either caused the hormone deficiency or exacerbated it. These medical opinions were given by Dr. Ramirez fulfilling the proper burden of proof as being "more probably than not within a reasonable degree of medical certainty." Due to this hormone deficiency, Michael Travasos, by age 13, only reached the 3rd percentile of the growth chart for his age. Dr. Ramirez recommended daily hormone injections for a period of three years. The treating physician testified that when children who present with these types of hormone deficiency are removed from the stressors causing the hormone deficiency[,] they usually catch up and grow. However, Michael Travasos was not removed from the stressors causing the hormone deficiency until his parents removed him from the public school and placed him in a private school.

The evidence submitted at trial was clear. The school failed to follow their protocol in disciplining Desmond JohnLouis. This resulted in further trauma and incidents occurring which caused Michael Travasos and his family physical, mental, and emotional pain.

"To recover, a plaintiff must show that the defendant's conduct is the cause in fact of the plaintiff's injuries. An action is the cause in fact of an injury if it is a substantial factor in bringing about the harm, such that the harm would not have occurred without it." *LaBorde v. Aerial Crop Care, Inc.*, 22-442, p. 10 (La.App. 3 Cir. 3/1/23), 358 So.3d 244, 249, *writ denied*, 23-469 (La. 5/23/23), 360 So.3d 1262 (citations omitted). Whether an action is a cause-in-fact of the injury is a factual determination left to the factfinder. *Miller v. Shelter Ins. Co.*, 18-216 (La.App. 3 Cir. 1/30/19), 266 So.3d 347.

A review of the record shows Plaintiffs' expert, Dr. Dania Ramirez, testified that the physical harassment and bullying that Michael encountered could cause the

12

growth hormone deficiency that he experienced. She further testified that had Michael been removed from the stressful environment, he probably would not have needed the three years of growth hormone injections.

As pointed out by Plaintiffs, this medical testimony was unrebutted by Defendant. Defendant did not submit a medical expert to testify at trial. Based on the record before us, we cannot say that the trial court was manifestly erroneous in finding that the injuries suffered by Michael Travasos was caused by Defendant.

*IV.    Assignments of Error Numbers Three and Eight – Allocation of Fault*

Defendant first argues that this lawsuit was filed due to a sexual assault by Desmond JohnLouis, and as the primary tortfeasor, he should have been allocated fault. Next, Defendant contends that Michael's parents David and Jamie should be allocated fault because they were negligent in allowing Michael to play football and basketball with Desmond.

In *Brammer v. Bossier Parish School Board*, 50,220 (La.App. 2 Cir. 11/25/15), 183 So.3d 606, a fourth-grade student was injured when he was knocked to the ground by fellow students to keep him from "tattling" to the teacher on duty. The appellate court affirmed the trial court's judgment, finding the school board liable. The appellate court further found that allocation of 100% fault to the school board was appropriate. Specifically, it found that an allocation of fault to the fellow students who knocked the victim down would be inappropriate under La.Civ.Code art. 2320.[1]

---

[1] Louisiana Civil Code Article 2320 states:

Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.

Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.

In *Pike v. Calcasieu Parish School Board*, 18-996 (La.App. 3 Cir. 5/15/19), 272 So.3d 943, *writ denied*, 19-1196 (La. 10/15/19), 280 So.3d 611, B.P., a first grader at Bell City High School, and two other boys engaged in sexual activity on the school bus. The child's parents sued the school board over the incidents. A jury found the school board 50% liable, with the other 50% assessed to the abuser. The plaintiffs filed a motion for JNOV on the issue, and the trial court granted the motion, citing *Doe ex rel. Doe*, 907 So.2d 275, finding the school board vicariously liable for the actions of the abuser. The school board appealed, arguing the trial court erred in failing to allocate fault to the child who abused the victim on the bus. Citing *Doe*, this court affirmed the 100% assessment of fault to the school board, finding that "[a]llowing the school board the benefit of the assessing of fault to a tortfeasor it is bound to supervise defies logic." *Pike*, 272 So.3d at 957.

> An appellate court may only reallocate fault if it finds the trial court was clearly wrong or manifestly erroneous in its allocation of fault. *See Clement v. Frey,* 95–1119, 95–1163 (La.1/16/96), 666 So.2d 607, 611. Pursuant to this standard, the two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court; and 2) whether the record further establishes that the finding is not manifestly erroneous. *Mart v. Hill,* 505 So.2d 1120, 1127 (La.1987). Even though an appellate court may feel its own evaluations and inferences are as reasonable as the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989); *Barham & Arceneaux v. Kozak,* 02–2325 (La.App. 1st Cir.3/12/04), 874 So.2d 228, 240, *writ denied,* 04–0930 (La.6/4/04), 876 So.2d 87.

---

In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.

The master is answerable for the offenses and *quasi*-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts, and of offenses and quasi-offenses.*

*Doe v. East Baton Rouge Parish School Board*, 06-1966, p. 14 (La.App. 1 Cir. 12/21/07), 978 So.2d 426, 438-39, *writ denied*, 08-189 (La. 3/28/08), 978 So.2d 306.

Based on the cases cited, we cannot say that the trial court was manifestly erroneous in assessing 100% fault to Defendant in this case.

*V.     Assignments of Error Numbers Four, Five, Six, and Seven – Damages*

Defendant complains that the trial court's amount of general damages awarded to Michael, David, and Jamie Travasos was excessively high. The trial court awarded the following amounts of general damages: Michael Travasos was awarded $250,000.00; David Travasos was awarded $50,000.00, and Jamie Travasos was awarded $50,000.00.

A fact-finder has great discretion in awarding general damages. La.Civ.Code art. 2324.1; *Pete v. Boland Marine and Mfg. Co., LLC*, 23-170 (La. 10/20/23), 379 So.3d 636. When an appellate court reviews a general damages award, the initial inquiry is whether the trial court abused its discretion. *Pete*, 379 So.3d 636. "It is the initial inquiry – determining whether there has been an abuse of discretion in an award for general damages – that is problematic, as '[g]eneral damages . . . are inherently speculative in nature and cannot be fixed with mathematical certainty.'" *Id*. at 641 (quoting *Wainwright v. Fontenot*, 00-492, p. 6 (La. 10/17/00), 774 So.2d 70, 74 (citation omitted) (alteration in original).

The jurisprudence previously mandated that a reviewing court only look to prior general damages awards once it determined that the trial court abused its discretion "and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion." *Id*. at 639. However, the Louisiana Supreme Court recently pronounced:

We have carefully considered whether it remains a sound practice to allow consideration of prior awards only after finding an "abuse of discretion," or whether those awards are a relevant factor to be considered in determining whether there has been an abuse of discretion at the outset. There are no specific parameters by which an "abuse of discretion" is measured, nor a meaningful definition of this phrase. Such determinations are not subject to mathematical exactitude or scientific precision. Indeed, as this Court has recognized, "[t]he standard for appellate review for abuse of discretion in the award of general damages is difficult to express and is necessarily non-specific."

The inherently subjective nature of the abuse of discretion standard in the context of reviewing general damage awards compels that some measure of objectivity be incorporated into the determination of an award's reasonableness, so that there is some standard for comparison. We now hold that an appellate court must consider relevant prior general damage awards as guidance in determining whether a trier of fact's award is an abuse of discretion.

*Id.* (alteration in original) (citations omitted) (footnotes omitted).

The supreme court further explained:

To be clear, a review of prior awards is not the only factor to be considered in evaluating whether a general damage award is an abuse of discretion; it is a starting point. No two cases will be identical. The review of prior awards will simply serve to illustrate and supply guidance in the determination of damages.

*Id.* at 643.

"[T]o determine whether a trier of fact abused its discretion in its award for general damages, an appellate court is to consider the particular facts and circumstances of a case, in conjunction with a review of prior awards." *Id.* at 644. Hence, the Louisiana Supreme Court established the following standard of review for an award of general damages:

We do not abandon the two-step analysis for the appellate review of a general damage award but modify the analysis as follows. The question of whether the trier of fact abused its discretion in assessing the amount of damages remains the initial inquiry. However, to evaluate this issue, an appellate court is to include a consideration of prior awards in similar cases, as well as the particular facts and circumstances of the case under review. If an abuse of discretion is

found, the court is to then also consider those prior awards to determine "the highest or lowest point which is reasonably within that discretion."

*Id*. at 644 (quoting *Jones v. Market Basket Stores, Inc.*, 22-841, p. 16 (La. 3/17/23), 359 So.3d 452, 464.

In *Doe*, 907 So.2d 275, a sixteen-year-old girl was sexually assaulted by five members of the basketball team while riding on a school bus that was transporting them to and from a basketball game. A jury awarded her $250,000.00 in total general damages: $200,000.00 for past and future mental anguish and $50,000.00 for past and future physical pain and suffering. Regarding the award for past and future physical pain and suffering, the appellate court stated, "Although the evidence does not show extensive physical injury to Jane Doe as a result of this sexual incident, we conclude that the award, even if on the high end, would not be considered excessive considering the physical ordeal she endured." *Id*. at 284. Similarly, in reviewing the past and future mental anguish award, the appellate court found:

> Considering the totality of the psychological evidence evaluating Jane Doe, we cannot say that this award for past and future mental anguish and loss of enjoyment of life is excessive. Although there was evidence that after the incident, Jane Doe fared well at her new school, the jury was in a better position to evaluate the psychological evidence offered and to assess the mental anguish she suffered while observing her demeanor and overall well being.

*Id.* at 284–85.

In *CD v. SC*, 22-961 (La. 6/1/23), 366 So.3d 1245, plaintiff CD was sexually assaulted by DJ in the bathroom while they were both campers at Rock Solid Camp. A jury awarded CD $1,250,000.00 in general damages. The appellate court found this award to be an abuse of discretion and reduced the award to $250,000.00. The Louisiana Supreme Court reversed the appellate court and

reinstated that original award of $1,250,000.00, finding CD suffered long term mental and emotional effects because of the sexual assault. It further found that the court of appeal erred by substituting its own judgment for that of the jury.

In *Pike v. Calcasieu Parish School Board*, 272 So.3d 943, B.P., a first grader at Bell City High School, and two other boys engaged in sexual activity on the school bus. A jury awarded B.P. $62,500.00 in general damages. The plaintiff filed a JNOV, and the trial found the jury's general damages award to be abusively low. The trial court increased this award to $500,000.00. On appeal, this court found that the $500,000.00 award was abusively high. This court awarded $200,000.00 in general damages to B.P.

Michael Travasos testified that he felt scared, uneasy, and timid around Desmond and like he was "walking on eggshells." Michael's health and growth began to suffer as a result. Michael was diagnosed with a growth hormone deficiency due to the abuse and continued contact with his abuser for which he had to take three years of hormone injections. David and Jamie testified that they noticed attitude changes in Michael, and his grades began to drop.

Based on our review of the record and the jurisprudence, we cannot say that the trial court's general damages award of $250,000.00 to Michael Travasos was an abuse of discretion. This assignment has no merit.

Next, Defendant complains that the general damages awarded to David and Jamie Travasos were abusively high. They were each awarded $50,000.00 for loss of consortium.

> In general, loss of consortium has seven elements: (1) loss of love and affection, (2) loss of society and companionship, (3) impairment of sexual relations, (4) loss of performance of material services, (5) loss of financial support, (6) loss of aid and assistance, and (7) loss of fidelity. The parents' claim for loss of service and society of their

child is essentially the same, but excludes the sexual component. A child may sustain physical injury without necessarily causing his parents a loss of consortium.

*Doe*, 907 So.2d at 285.

In *Doe*, 907 So.2d 275, which has been previously discussed, the appellate court affirmed a loss of consortium award of $10,000.00 to both the victim's father and twin sister as a result of the sexual assault that occurred. Adjusted for inflation as of the February 2022 trial date, using the U.S. Bureau of Labor Statistics Consumer Price Inflation Calculator, this award was approximately $15,000.00.

In *Pike*, 272 So.3d 943, the jury did not award loss of consortium damages. The trial court granted JNOV on the issue and awarded them $20,000.00. This court found no abuse of discretion in the trial court's grant of the JNOV. Finding that reasonable minds could not differ regarding the parents' loss, this court stated that the parents "testified at trial about how these incidents have changed their relationship with their son, about the mental distress and anguish these incidents have caused them, about the distrust they have in the school board, and about the efforts they have expended in attempting to get their son treated." *Id*. at 953.

In *S.K. v. Catholic Diocese of Baton Rouge*, 07-742 (La.App. 1 Cir. 12/21/07) (unpublished opinion), plaintiffs' minor daughter was improperly touched while in class. After reversing the trial court and finding the defendant was liable, the appellate court awarded loss of consortium damages to the father in the amount of $500.00. The mother was awarded $1,000.00.

After a review of the record, the Travasos and the rest of their family were affected by the actions of the school board. The Travasos placed Michael in private school in order to move Michael away from his abuser. The hormone injections were $20,000.00 per year. The ordeal caused much stress for the family.

However, based on the jurisprudence, we find that $50,000.00 for each parent is an abuse of discretion. We further find that $15,000.00 awarded to each parent is the highest point which is reasonably within the factfinder's discretion.

Finally, Defendant argues that the special damages award of $26,485.00 for Michael's private school tuition was an abuse of discretion. Defendant argues that this was not an expense that Plaintiffs incurred. Jamie's father, Nelson, paid 100% of Michael's private school tuition. When asked if these payments were a loan to David and Jamie, Nelson responded that it was not. Defendant argues Plaintiffs did not incur any loss because they did not pay the tuition, and they are not expected to repay Jamie's father. The testimony of Plaintiffs is that it was a loan and that they were planning on paying it back from the amount awarded in this case.

"Special damages are those damages that can be determined with some degree of certainty." *Weir v. Kilpatrick's Rose-Neath Funeral Homes, Crematorium and Cemeteries, Inc.*, 54,030, p.8 (La.App. 2 Cir. 9/22/21), 327 So.3d 618, 624. Special damages must be proven by a preponderance of the evidence by the plaintiff. *Id.* "An award of special damages is reviewed pursuant to the manifest error standard of review." *Id.*

The record shows that Plaintiffs did not pay Michael's private school tuition – Michael's grandfather did. There is conflicting testimony about whether the tuition was expected to be re-paid. Based on the record, we cannot say that Plaintiffs proved this item of special damages by a preponderance of the evidence. We find that the trial court was manifestly erroneous in awarding $26,485.00 for Michael's private school tuition.

**DECREE**

Plaintiffs' objection to the Amended Motion and Order for Devolutive Appeal is sustained.  The loss of consortium damages awarded to David Travasos is reduced to $15,000.00.  The loss of consortium damages awarded to Jamie Travasos is reduced to $15,000.00.  That part of the judgment awarding private school tuition in the amount of $26,485.00 is reversed.  The judgment is affirmed in all other respects.  Costs of this appeal in the amount of $8,819.11 is assessed equally between the parties.

**AFFIRMED IN PART, AS AMENDED; AND REVERSED IN PART.**

NUMBER 23-640

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

DAVID TRAVASOS, ET AL.

VERSUS

LAFAYETTE PARISH SCHOOL BOARD, ET AL.

**STILES, Judge, concurring in part, dissenting in part.**

I concur in part with the majority's opinion and dissent in part, as discussed below.

I agree with the majority's ultimate determination that the trial court was not manifestly erroneous in finding that Defendant, Lafayette Parish School Board, breached its duty to Plaintiffs. I dissent, however, to the extent that the majority maintains a finding of fault for the original school bus incident which occurred when Michael Travasos and Desmond JohnLouis were in the seventh grade. As recently stated by this court in *Taylor v. Swift*, 22-623, p. 11 (La.App. 3 Cir. 5/10/23), 366 So.3d 666, 674, the "proper analysis is to determine whether the conduct was foreseeable from these particular students, at this particular time, in this particular manner." I find no indication that, with regard to that initial school bus encounter, Defendant had reason to believe that Desmond posed a threat to Michael for that particular harm, under those circumstances.

I agree with the majority, however, that Defendant was at fault for allowing Michael and Desmond into the same classroom in eighth grade, a choice that was made only after the school bus incident and after Defendant assured the parents that a plan would be implemented to keep the boys separate from each other. Once

Defendant set forth a plan, the plan became the duty it owed Plaintiffs. Defendant breached that duty in failing to see the plan through.

The majority also finds that the trial court was not manifestly erroneous in determining that Michael's injuries were caused by Defendant's breach of the duty it owed to Plaintiffs. My review of the evidence, however, does not reveal support for a finding that damages for the type of injuries alleged by Plaintiffs—"hormone deficiency"—are awardable on this record. Rather, "[a] risk may not be within the scope of a duty where the circumstances of the particular injury to the plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty." *Kulka v. Shag II*, 12-398, p. 7 (La.App. 3 Cir. 10/24/12), 100 So.3d 412, 417 (citing *Todd v. State Through Dep't of Soc. Servs.*, 96-3090 (La. 9/9/97), 699 So.2d 35). "To recover, a plaintiff must show that the defendant's conduct is the cause in fact of the plaintiff's injuries. An action is the cause in fact of an injury if it is a substantial factor in bringing about the harm, such that the harm would not have occurred without it." *LaBorde v. Aerial Crop Care, Inc.*, 22-442, p. 8 (La.App. 3 Cir. 3/1/23), 358 So.3d 244, 249 (citations omitted), *writ denied*, 23-469 (La. 5/23/23), 360 So.3d 1262. I find that Plaintiffs' claim of hormone deficiency was tenuous and not proven to be "a substantial factor in bringing about the harm, such that the harm would not have occurred without it." *Id.* Nor does the record reflect that any such harm was a foreseeable consequence of Defendant's breach.

While Plaintiffs offered Dr. Dania Ramirez's testimony regarding causation, Dr. Ramirez stated merely that the physical harassment and bullying experienced by Michael "could cause" his growth hormone deficiency, and that had he been removed from the stressful environment, he "probably would not have needed" three

years of growth hormone injections. "Could cause" growth hormone deficiency and "probably would not have needed" treatment do not equate to cause-in-fact, particularly given Michael's medical history. Moreover, Michael's parents were concerned that he was not growing and had not hit puberty prior to the incidents which occurred when he was in the eighth grade. Thus, in my opinion, the medical evidence regarding causation of the hormone deficiency was inconclusive and further failed to support a finding that such a deficiency was a foreseeable harm that would result from Defendant's breach of duty. Accordingly, I would reduce the general damage award to $100,000.00 to reflect an award for Plaintiffs' remaining claims.

For these reasons, I concur with the majority's finding that Defendant was at fault for the eighth-grade incidents, as it failed to uphold its end of the bargain to Michael and his family. However, I respectfully dissent from the majority's finding that Defendant's breach of duty was a cause in fact of Michael's hormone deficiency and would thus reduce the general damage award to $100,000.00. Finally, I concur with the majority's reduction of the parents' loss of consortium damages and join in the majority's opinion in all other aspects.